IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CR-192 |
| | ) | |
| STEPHEN COOK, | ) | Hon. Ellen S. Huvelle |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT STEPHEN COOK'S MOTION TO DISMISS COUNTS FOUR, FIVE, SIX AND SEVEN ON DOUBLE JEOPARDY GROUNDS BASED UPON MULTIPLICITY IN THE INDICTMENT OR ALTERNATIVELY TO COMPEL THE GOVERNMENT TO ELECT BETWEEN COUNT FOUR OR COUNT FIVE AND BETWEEN COUNT SIX OR COUNT SEVEN</u>**

NOW COMES Defendant Stephen Cook, by and through his undersigned counsel, respectfully moving this Court to dismiss Counts Four, Five, Six, and Seven of the indictment because the charges are multiplicitous, violating Mr. Cook's Fifth Amendment right against double jeopardy. Alternatively, Mr. Cook respectfully moves this Court to compel the government to elect between Count Four or Count Five and between Count Six or Count Seven. In support of this motion, Mr. Cook states as follows:

**INTRODUCTION**

On August 7, 2007, a grand jury charged Mr. Cook with a seven count indictment. Count One of the indictment alleges a violation of 18 U.S.C. § 242; Count Two alleges a violation of 18 U.S.C. § 1001; and Count Three alleges a conspiracy to conceal the alleged violation of Section 242, in violation of 18 U.S.C. § 371.

Counts Four, Five, Six, and Seven are the subject of this instant motion to dismiss. First, Mr. Cook suggests that Count Four is multipicitous with Count Five. Count Four alleges a

1

violation of 18 U.S.C. § 1512(b)(1):

> On or about September 28, 2006, Defendant Stephen Cook did knowingly and corruptly attempt to persuade a witness whose identity is known to the Grand Jury, to testify falsely before a federal Grand Jury, with the intent to influence, delay, and prevent the testimony of the witness, in order to affect an investigation being conducted in the District of Columbia, specifically, the federal Grand Jury investigation of Defendant Stephen Cook's use of unreasonable force against Omar Hunter, while Hunter was in the custody of the United States Marshals Service in the District of Columbia Superior Court, as alleged in Count One of this indictment.

(Indictment Count Four).  Count Five alleges a violation of 18 U.S.C. § 1512[c](2):

> On or about September 28, 2006, Defendant Stephen Cook did corruptly obstruct, influence, impede, and corruptly did attempt to obstruct, influence, and impede, an official proceeding with the intent to affect a Grand Jury investigation being conducted in the District of Columbia, specifically, the federal Grand Jury investigation of Defendant Stephen Cook's use of unreasonable force against Omar Hunter, while Hunter was in the custody of the United States Marshals Service in the District of Columbia Superior Court, as alleged in Count One of this indictment, by telling a co-conspirator, whose identity is known to the Grand Jury, to provide false information to the Grand Jury as alleged in Count Four of this indictment, and to the officers and attorneys conducting the Grand Jury investigation.

(Indictment Count Five).

Mr. Cook also suggests that Count Six is multiplicitous with Count Seven.  Count Six alleges a violation of 18 U.S.C. § 1512(b)(1):

> On or about October 23, 2006, Defendant Stephen Cook did knowingly and corruptly attempt to persuade a witness, whose identity is known to the Grand Jury, to testify falsely before a federal Grand Jury, with the intent to influence, delay, and prevent the testimony of the witness, in order to affect an investigation being conducted in the District of Columbia, specifically, the federal Grand Jury investigation of Defendant Stephen Cook's use of unreasonable force against Omar Hunter, while Hunter was in the custody of the United States Marshals Service in the District of Columbia Superior Court, as alleged in Count One of this indictment.

(Indictment Count Six).  Count Seven alleges a violation of 18 U.S.C. § 1512[c](2):

> On or about October 23, 2006, Defendant Stephen Cook did corruptly obstruct, influence, impede, and corruptly did attempt to obstruct, influence, and impede, an official

proceeding, with the intent to affect an investigation being conducted in the District of Columbia, specifically, the federal Grand Jury investigation of Defendant Stephen Cook's use of unreasonable force against Omar Hunter, while Hunter was in the custody of the United States Marshals Service in the District of Columbia Superior Court, as alleged in Count One of this indictment, by telling a co-conspirator, whose identity is known to the Grand Jury, to provide false information to the Grand Jury as alleged in Count Six of this indictment, and to the officers and attorneys conducting the Grand Jury investigation.

(Indictment Count Seven).

As stated in open court by the government on September 5, 2007, the same person is the "witness" and "co-conspirator" referred to in Counts Four, Five, Six, and Seven. Mr. Cook argues that Count Four is multiplicitous with Count Five and Count Six is multiplicitous with Count Seven. Thus, Mr. Cook argues that these Counts should be dismissed and the government should elect which charges to properly bring.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CHARGES FOR MULTIPLICITY IN THE INDICTMENT**

When determining whether an indictment is multiplicitous, the Court must engage in a statutory interpretation analysis. Whalen v. United States, 445 U.S. 684, 691 (1980) (citing Blockburger v. United States, 284 U.S. 299 (1932)). The proper three-step procedure to be followed in evaluating a claim of multiplicity is found in United States v. Albernaz, 450 U.S. 333 (1981). First, the Court must analyze the statutory language of the two provisions, and "[i]f the offenses charged are set forth in different statutes or in distinct sections of a statute, and each section unambiguously authorizes punishment for a violation of its terms, it is ordinarily to be inferred that Congress intended to authorize punishment under each provision." United States v. Marrale, 695 F.2d 658, 662 (2d Cir. 1982) (citing Albernaz, 450 U.S. at 336). However, the Court must then determine if Congress' authorization of multiple punishments is constitutional,

and the Court is required to employ the Blockburger test.  Marrale, 695 F.2d at 662 (citing Albernaz, 450 U.S. at 337-40).  "If the court finds that each offense requires proof of a fact that the other does not, it should presume that multiple punishments are authorized."  Marrale, 695 F.2d at 662 (citing Albernaz, 450 U.S. at 337-40).  Finally, if the first two steps authorize multiple punishments, the Court is to look to the legislative history to determine if "contrary congressional intention is disclosed."  Marrale, 695 F.2d at 662 (citing Albernaz, 450 U.S. at 340-42).

Here, it can be inferred that Congress authorized different punishments for violations of Sections 1512(b)(1) and 1512[c](2) because the offenses are contained in distinct sections of Section 1512.  However, the charges of violations of Section 1512(b)(1) are lesser included offenses of the violations of Section 1512[c](2), and, thus, the indictment fails the second prong of the multiplicity test by violating the Fifth Amendment under the Blockburger test.

The Fifth Amendment guarantees that a defendant be free from double jeopardy.  North Carolina v. Pearce, 395 U.S. 711, 717 (1969).  Specific to this case, the Double Jeopardy Clause "protects against multiple punishments for the same offense."  Ohio v. Johnson, 467 U.S. 493, 498 (1984) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1977)).  "[A]n indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions."  United States v. Clarke, 24 F.3d 257, 261 (D.C. Cir. 1994) (quotations and citation omitted).

However, "[i]f Congress defines the crimes charged as separate and distinct offenses, an accused may be charged with these offenses separately."  United States v. Serino, 835 F.2d 924, 930 (1st Cir. 1987).  The Supreme Court has held that "[w]here the same act of transaction

4

constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). "This test emphasizes the elements of the two crimes. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." Brown, 432 U.S. at 166. "[T]wo counts are multiplicious if the evidence shows that exactly the same facts that would make out one violation also would make out the other." United States v. Stanfa, 685 F.2d 85, 88 (3d Cir. 1982).

The Supreme Court has further held that "[i]n subsequent applications of the [Blockburger] test, we have often concluded that two different statutes define the 'same offense,' typically because one is a lesser included offense of the other." Rutledge v. United States, 517 U.S. 292, 296 (1996) (citations omitted). Where there "is no fact required to prove [Count B] that is not also required to prove [Count A]... this would make [Count A]... the equivalent of a 'lesser included offense' of... [Count B, and] an indictment charging both would fail the Blockburger test." United States v. Weathers, 186 F.3d 948, 951 (D.C. Cir. 1999) (citation omitted).

I.  **THE CHARGES UNDER SECTIONS 1512(b)(1) AND 1512[c](2) ARISE OUT OF THE SAME EXACT CONDUCT**

The conduct charged in Count Four is the same exact conduct charged in Count Five.[1] "The existence of a more narrowly tailored statute does not necessarily prevent prosecution under

---

[1] For the sake of simplicity, Mr. Cook will only argue multiplicity as to Counts Four and Five. However, the same analysis applies to Counts Six and Seven, as these Counts occurred between the same person, during the same proceeding, and on the same date, but on a different date than Counts Four and Five. Thus, if Count Four is muliplicitous with Count Five, then Count Six is multiplicitous with Count Seven.

5

a broader statute, so long as the defendant is not punished under both statutes for the same conduct." United States v. Ruhbayan, 388 F.Supp.2d 652, 658 (E.D. Va. 2004) (quoting United States v. Kenny, 973 F.2d 339, 342 (4th Cir. 1992) (finding that a determination as to whether charges under § 1503 and § 1512(b) involve the same conduct could only be made after evidence was heard at trial)). This case does not involve substantial overlap of proof, but instead involves the exact same proof in both Count Four and Count Five.

It is beyond argument that Counts Four and Five arise out of the exact same conduct. Counts Four and Five deal with the same date, September 28, 2006. Furthermore, Counts Four and Five deal with the same person, described as a 'witness' in Count Four and a 'co-conspirator' in Count Five, being corruptly influenced. Counts Four and Five also concern the exact same official proceeding, the grand jury investigation, in which the 'witness/co-conspirator' had been compelled to testify.

Furthermore, in Counts Four and Five, the government alleges the same behavior; that Mr. Cook attempted to persuade or induce the witness/co-conspirator to testify falsely before the grand jury. Under Count Five, to convict Mr. Cook of a violation of Section 1512(b)(1), the government will attempt to show that Mr. Cook attempted to persuade a grand jury witness to testify falsely before the grand jury, with the intent to impede the testimony of the witness, in order to "affect" the grand jury investigation. Under Count Five, to convict Mr. Cook of a violation of Section 1512[c](2), the government must prove that Mr. Cook intended to impede or influence the grand jury investigation by telling the grand jury witness to testify falsely before the grand jury. Essentially, the government has alleged the same facts as to both of these charges, that Mr. Cook attempted to persuade a grand jury witness to testify falsely in order to affect or

influence the grand jury investigation. In Count Four, the government uses the language of "affect" while in Count Five, the government mimics the language of the statute with "obstruct," "influence," or "impede," but the difference in word use is merely a matter of semantics. In fact, the verb "affect" is defined as "to have an influence on," and "affect" is a synonym to "influence." See The American Heritage Dictionary of the English Language (4th Ed. 2007). Thus, by the very facts alleged in the indictment, the government is using the exact same behavior and facts to prosecute Mr. Cook under Count Four and Count Five.

Therefore, Count Four and Five involve the exact same alleged conduct; that on September 28, 2006, Mr. Cook attempted to persuade a single grand jury witness to testify falsely. The *only* difference in the Counts is the intent of Mr. Cook. Did Mr. Cook intend to corruptly impede the testimony of the witness without regard to the grand jury's investigation or did Mr. Cook intend to impede the investigation of the grand jury by impeding the testimony of the witness?

The only case that directly addresses the possible multiplicity between a charge of § 1512(b)(1) and § 1512[c](2) suggests that in certain situations an indictment charging both violations would be multiplicitous. United States v. Guardiola Ramirez, No. CRIM. 06-006, 2006 WL 573917 (D. Puerto Rico Mar. 8, 2006) (unreported). In that case, the court undertook a multiplicity analysis but found that the charges were not multiplicitous because the same conduct was not alleged under each count. The court wrote that:

> [t]he defendant would have the Court find that, although he undertook to corruptly influence *different persons* (Colon, and Matos and his son-in-law) and *different proceedings* (GSA/OIG investigation and grand jury proceedings) on *separate, distinct occasions*, he committed only one crime which the government then impermissibly broke down into separate charges, in violation of the Double Jeopardy Clause. It then follows

that the indictment is not facially multiplicitous."

Id. at *2. In the instant case, there are not different persons, different proceedings, or separate and distinct occasions, but rather the same witness, the same proceeding- the grand jury proceeding, and the same occasions- September 28, 2006 for Counts Four and Five and October 23, 2006 for Counts Six and Seven. Thus, the indictment may be multiplicitous.

Under modern precedent regarding multiplicity, the fact that the government is using the same evidence and the same conduct to charge Mr. Cook with two separate violations is not determinative as to impermissible multiplicity. See United States v. Kenny, 973 F.2d 339 (4th Cir. 1992). Rather, the Court must look to the elements of the offense. Looking to the elements of the offenses, it is apparent that § 1512(b)(1) is a lesser included offense of § 1512[c](2), with § 1512[c](2) requiring a higher culpability, the intent to obstruct the grand jury proceeding as a whole, rather than the intent to merely obstruct the testimony of a single witness.

II.     **SECTION 1512(b)(1) IS A LESSER INCLUDED OFFENSE OF SECTION 1512[c](2), AND THEREFORE THE INDICTMENT CHARGING BOTH OFFENSES IS IMPERMISSIBLY MULTIPLCITOUS**

Section 1512(b)(1) is a lesser included offense of Section 1512[c](2), and, thus, it is impermissible to charge Mr. Cook with violations of each of these statutes in the indictment. The Supreme Court has held that where "two different statutes define the 'same offense,' typically [this is] because one is a lesser included offense of the other." Rutledge, 517 U.S. at 297. In Rutledge, the Supreme Court found that "§ 846 is a lesser included offense of § 848, because § 848 requires proof of every fact necessary to show a violation under § 846 as well as proof of several additional elements." Id. at 299.

In Ball v. United States, 470 U.S. 856, 862 (1985), the Supreme Court found that:

8

> Applying [the Blockburger] rule to the firearms statutes, it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon. When received, a firearm is necessarily possessed. In other words, Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had not intention of subjecting that person to two convictions for the same criminal act.

Thus, where conviction of one offense necessarily includes a conviction on another offense, the other offense is a 'lesser included offense.'

Relevant to the charges in this case, the Ninth Circuit has found that "18 U.S.C. 1512(d) is a lesser-included offense of 18 U.S.C. 1512(b)...." United States v. Chaggar, 197 Fed.Appx. 704, 707 (9th Cir. 2006) (unreported) (finding that harassing a witness is a lesser included offense of intimidating a witness). See also United States v. Lefler, 880 F.2d 233 (9th Cir. 1989). It is important to note that while the Ninth Circuit found that 18 U.S.C. 1512(d) is a lesser included offense of 18 U.S.C. 1512(b), both statutory subsections contain ostensibly different elements. § 1512(b)(1) requires that the defendant 1) knowingly, 2) uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, 3) with intent to influence, delay, or prevent the testimony of any person, 4) in an official proceeding. § 1512(d)(1) requires that the defendant 1) intentionally harass another person 2) thereby hindering, delaying, preventing, or dissuading any person from 3) attending or testifying in an official proceeding. These two subsections differ in their elements in a matter of degree, however, as § 1512(b)(1) requires the action to be more severe- threatening or intimidating- while § 1512(d)(1) only requires harassing. Furthermore, § 1512(d)(1) requires the intent to harass a witness, while § 1512(b)(1) requires the intent to prevent the witness from testifying.

An examination of the elements of Subsections 1512(b)(1) and [c](2) reveals that it is impossible for a defendant to be convicted of violating § 1512[c](2) without also being convicted of the lesser included offense of violating § 1512(b)(1). This is because the only difference between the statutes is the intent required by a defendant- to obstruct the official proceeding or to obstruct the witness' testimony. Once a defendant is found to have the intent to obstruct the official proceeding, it follows that the defendant would also have had the intent to obstruct the testimony of the witness, which is the means by which the defendant would obstruct the official proceeding. Essentially, § 1512(b)(1) is witness tampering, while § 1512[c](2) is witness tampering with the intent to obstruct the official proceeding.

The elements of § 1512(b)(1) are: 1) knowingly; 2) attempting to corruptly persuade another person; 3) with intent to influence, delay, or prevent the testimony of any person; 4) in an official proceeding. The elements of § 1512[c](2) are: 1) knowingly; 2) attempting to corruptly obstruct, influence, or impede; 3) an official proceeding.

At first blush, § 1512(b)(1) appears to have different elements from § 1512[c](2). However, closer examination reveals that every violation of § 1512[c](2) will also be a violation of § 1512(b)(1), and that Section 1512(b)(1) does not require proof of an additional fact apart from the facts required by Section 1512[c](2).

First, both § 1512(b)(1) and § 1512[c](2) require proof of the fact that there was an official proceeding, the grand jury investigation. Thus, for both Counts, the government will be required to prove that the same grand jury proceeding was occurring on September 28, 2006. Furthermore, both § 1512(b)(1) and § 1512[c](2) require that the attempt to obstruct on September 28, 2006 was done knowingly.

10

Sections 1512[c](2) and 1512(b)(1) seem to differ in that the former requires the attempt to corruptly obstruct, influence, or impede the official proceeding, while the latter only requires the attempt to corruptly persuade a witness not to testify with the intent to impede or obstruct the witness' testimony. Therefore, looking at the statutes on their face, § 1512(b)(1) requires the intent to obstruct a witness' testimony, without proof of the intent to obstruct the grand jury investigation, while § 1512[c](2) requires the intent to obstruct a grand jury investigation.

However, because the Blockburger test is essentially a test of statutory interpretation, the rules of statutory construction cannot be ignored. One of the fundamental principles of statutory interpretation is that a statute must be read as a whole. The Supreme Court has held that it is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but (should) look to the provisions of the whole law, and to its object and policy." Richards v. United States, 369 U.S. 1, 11 (1962). Thus, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). The Supreme Court continues that:

> [i]n so concluding we do nothing more, of course, than follow the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context. Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used....

King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991).

Section 1512 is specifically targeted at combating the tampering with a witness, victim, or

11

an informant. Witness tampering is the primary evil that Section 1512 seeks to vitiate. Subsection (a), (b), and (d) explicitly deal with the harm of witness tampering, yet subsection [c] does not explicitly mention this harm. Compare § 1512(a) (outlawing the attempt to kill or use physical force against a person to prevent his testimony at an official proceeding, production of evidence at an official proceeding or communication to a law enforcement officer), and § 1512(b) (outlawing use of intimidation, threats, corrupt persuasion, or misleading conduct to prevent a person from testifying or producing evidence in an official proceeding or to a law enforcement officer), and § 1512(d) (prohibiting harassment of a person which prevents that person from testifying in an official proceeding or reporting to a law enforcement officer), with § 1512[c] (omitting mention of misconduct toward a witness, but punishing the obstruction of an official proceeding).

Furthermore, the enacting legislation demonstrates that Congress intended that the scope of Section 1512 pertains to witness tampering. Congress declared that "[w]ithout the cooperation of victims and witnesses, the criminal justice system would cease to function; yet with few exceptions these individuals are... ignored by the criminal justice system." Victim and Witness Protection Act of 1982, Pub. L. 97-291, 1982 § 2420. Therefore, one of the purposes of Section 1512 is "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process." Victim and Witness Protection Act of 1982.

Even though the modern § 1512[c] was not added until 2002, and it was added as part of the Sarbanes-Oxley Act, it is apparent that Congress intended for subsection [c] to apply to obstruction of justice through witness tampering. 18 U.S.C. § 1503 already contained an omnibus obstruction of justice section when § 1512[c] was enacted. Section 1512[c]

substantially mirrors the language of § 1503.  Compare 18 U.S.C. § 1512[c] ("Whoever corruptly... obstructs, influences, or impedes any official proceeding, or attempts to do so."), with 18 U.S.C. § 1503 ("Whoever corruptly, or by threats or force, or by an threatening letter or communication endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States....").  It's highly unlikely that Congress would add a new subsection of a statute to cover the exact same conduct that another statute already pertains to.  In fact, "[p]rior to the enactment of 18 U.S.C. § 1512, section 1503 prohibited influencing or intimidating '*any witness*... any grand or petit juror, or officer in or of any court of the United States....  The Act removed from section 1503 all references to witnesses and enacted section 1512 to protect witnesses, victims, and informants."[2]  United States v. Lester, 749 F.2d 1288, 1292 (9th Cir. 1984) (emphasis added).  Therefore, undoubtedly, Section 1512 is a more specific statute that deals with obstructive behavior that involves the tampering with witnesses.

Furthermore, within Section 1512, there is an increasing degree of intent to obstruct within the subsections.  Section 1512(d) only requires that the person intend to harass a witness, with the natural consequence of the harassment causing the witness not to testify.  Sections 1512(a) and (b) require an intent to prevent the witness from testifying.[3]  Section 1512[c]

---

[2] Despite it being apparent that Section 1512 refers to the more specific conduct of witness tampering, courts have held that Section 1503 still broadly covers behavior that constitutes witness tampering as well as other obstructive behavior. "The fact that § 1512 more specifically addresses improper conduct involving a witness does not preclude application of § 1503.  The existence of a more narrowly tailored statute does not necessarily prevent prosecution under a broader statute, so long as the defendant is not punished under both statutes for the same conduct." United States v. Kenny, 973 F.2d 339 (4th Cir. 1992) (citing United States v. Grenagle, 588 F.2d 87 (4th Cir. 1978), *cert. denied*, 440 U.S. 927 (1979)). But see United States v. Hernandez, 730 F.2d 895, 899 (2d Cir. 1984) ("In short, by enacting the Victim and Witness Protection Act in 1982, Congress intended that intimidation and harassment of witnesses should thenceforth be prosecuted under § 1512 and no longer fall under § 1503.").

[3] Despite this statutory scheme, Section1512(b) is not a lesser included offense of Section 1512(a) because Section 1512(b) is concerned with intimidation while Section 1512(a) is concerned with physical force, which are two different acts.  See United States v. Murphy, 406 F.3d 857 (7th Cir. 2005).

requires the highest degree of obstructive intent, the intent to obstruct the official proceeding. Such a statutory intent scheme is similar to other statutes that include lesser included offenses. The law surrounding homicide offers a useful analogue. Murder requires malice aforethought or premeditation. Involuntary and voluntary manslaughter are lesser included offenses of murder. Voluntary manslaughter requires the less culpable intent of 'heat of passion.' Involuntary manslaughter requires the lesser culpable intent of criminal negligence. The degree of intent involved in all of these offenses is different, but the wrong that these offenses address, the killing of another human, is the same. Similarly, the wrong addressed by the subsections of § 1512 are the same, with the degree of culpability of the defendant differing. Thus, when an indictment charges the same act for multiple violations of Section 1512, the indictment will fail for unconstitutional multiplicity.

Essentially, if a jury convicts Mr. Cook of violating Section 1512[c](2), the jury will also necessarily convict Mr. Cook of a violation of Section 1512(b)(1). If the jury finds that Mr. Cook attempted to obstruct the grand jury proceeding by persuading the witness to testify falsely, the jury will have necessarily also have made the finding that Mr. Cook persuaded the witness to influence the witness' testimony, which constitutes a violation of Section 1512(b)(1). Therefore, in this case where the charges are based on Mr. Cook's exact same behavior, Section 1512(b)(1) is a lesser included offense of Section 1512[c]. Thus, the indictment which includes Count Four and Count Five and Count Six and Count Seven violates Mr. Cook's Fifth Amendment right to be free from double jeopardy because Count Four is the lesser included offense of Count Five and Count Six is the lesser included offense of Count Seven.

## CONCLUSION

WHEREFORE, Mr. Cook respectfully requests that the Court dismiss Counts Four, Five, Six, and Seven for unconstitutional multiplicity or alternatively compel the government to elect between Count Four or Count Five and Count Six or Count Seven.

Respectfully Submitted,

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
11582 Greenwich Point Road
Reston, VA 20194
Phone: (703) 834-0204
Fax: (703) 834-0206
Email: wbmoffitt_esq@yahoo.com

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that the **Motion to Dismiss Counts 5 and 7 On Double Jeopardy Grounds Based Upon Multiplicity** was served upon the following individual on September 28, 2007 by electronic means through the ECF system:

John M. Cummings
U.S. Attorney's Office
555 Fourth Street, NW
Washington, DC 20530
(202) 305-1637

      Respectfully Submitted,

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
11582 Greenwich Point Road
Reston, VA 20194
Phone: (703) 834-0204
Fax: (703) 834-0206
Email: wbmoffitt_esq@yahoo.com