IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CR-192 |
| | ) | |
| STEPHEN COOK, | ) | Hon. Ellen S. Huvelle |
| | ) | |
| Defendant. | ) | |

**DEFENDANT STEPHEN COOK'S MOTION TO SUPPRESS HIS INVOLUNTARY
STATEMENT MADE IN HIS FIELD AND USE OF FORCE REPORTS**

NOW COMES, Defendant Stephen Cook, by and through undersigned counsel, respectfully moving this Court to suppress his involuntary statements made in his field report and use of force report. In support of this motion, Mr. Cook states as follows:

**INTRODUCTION**

The government alleges that on August 30, 2005, Mr. Cook used unreasonable force against Omar Hunter, while Hunter was in the custody of the United States Marshals Service. (Indictment Count One) In Count Two, the government alleges that Mr. Cook submitted a false statement to the United States Marshals Service, in which he falsified information regarding his ostensible use of force against Hunter. (Indictment Count Two) Furthermore, the submission of this supposedly false statement is one of the overt acts alleged under the conspiracy charge. (Indictment Count Three)

The basis of the charge of the violation of 18 U.S.C. § 1001(a)(1) and (2) is that Mr. Cook submitted a false USM-210 Field Report and a false USM-133 Use of Force Report regarding his use of force against Hunter. Mr. Cook contends that the statement contained in his Field Report and Use of Force Report was involuntarily compelled and impermissibly coerced,

1

and thus, the Court should determine that it is inadmissible and suppress the statement.[1]

The facts leading up to Mr. Cook's compulsory and coerced writing of his statement are critical to an understanding of this matter. Mr. Cook is a Deputy United States Marshal. Supervisory Deputy United States Marshal Paul Rivers is Mr. Cook's supervisor. After the alleged incident involving Hunter, precipitated by a complaint filed by Hunter, SDUSM Rivers told Mr. Cook to write a USM-210 Field Report concerning the incident. It is Mr. Cook's contention that the investigation into his ostensible cover-up of the incident began immediately after Hunter filed the complaint. SDUSM Rivers' order for Mr. Cook to write the Field Report was the first step in investigating Mr. Cook's possible cover-up of the incident alleged by Hunter.

After Mr. Cook submitting the Field Report, SDUSM Rivers then ordered Mr. Cook to also write a USM-133 Use of Force Report. Mr. Cook protested, stating that because no force was used, there was no reason to write a Use of Force Report. Despite his protestation, Mr. Cook succumbed to SDUSM River's orders and wrote the Use of Force Report. The Use of Force report was ordered as part of the investigation into both the incident alleged by Hunter and the possible cover-up after the incident, including the possible use of false information in the original Field Report.

At no time during SDUSM Rivers' order for Mr. Cook to write his statement in the

---

[1] The statement in the Field Report and the Use of Force Report is exactly the same:

On August 30, 2005, while working AM cell block, I was checking in prisoner vans from the central cell block. I was attempting to verify prisoner Hunter, Omar Buens identity by asking for his first name and he would not respond. I repeatedly asked Hunter for his last name and he refused to answer me. I then asked Hunter to step off the van and he refused to move stating that he was not going anywhere. After asking Mr. Hunter at least three more times to exit the van, and if there was any medical reason that might prevent him from exiting the van. After he responded that there was not, I entered the van and assisted Mr. Hunter out of the van. Mr. Hunter was then escorted up to the main cell block area. There were no injuries to Marshals Service personnel or prisoners during this incident.

reports did SDUSM River's give Mr. Cook a <u>Garrity</u> notice concerning his rights to answer investigatory questions.[2]

The United States Marshals Service Policies and Procedures are also important to understand the compulsion and coercion that resulted in Mr. Cook making his statement. Importantly, the 1996 Master Agreement between the United States Marshals Service and the American Federation of Government Employees, AFL-CIO ("Master Agreement") contains procedures that must be followed regarding the investigation of a United States Marshals Service employee. Under Article 39, Section 2 (Procedures for Taking Investigative Statements), the Master Agreement states that:

> In matters where the allegations would result in a penalty greater than 14 days, demotion or removal and the investigation is conducted by an official of the Office of Inspection the following procedures apply:
>
> 1. The Employer will notify the employee that it wishes to take a statement from the employee.
> 2. Upon request, the subject employee will be provided reasonable official time to exercise his/her rights and to contact the Union representative for advice.
> 3. If the employee desires Union representation, he/she has three work days (72 hours) to secure a representative.
> 4. If the employee is unable to obtain a representative within the three days (72 hours) time period, then the Employer is free to take a statement.

Master Agreement, Art. 39, § 2.

It should also be noted that whether the investigation concerned the original alleged incident involving Hunter or the subsequent alleged cover-up, the possible sanction would be

---

[2] A <u>Garrity</u> statement, is a statement made by an officer for which the officer has been granted immunity in subsequent criminal actions by operation of law, where the officer must choose between losing his job or incriminating herself. Thus, the officer would be granted immunity in any criminal proceeding for his compelled statement made in an internal investigation, but would also be subject to employment sanctions for remaining silent. See <u>Sher v. U.S. Dept. of Veterans Affairs</u>, 488 F.3d 489 (1st Cir. 2007). Thus, <u>Garrity</u> immunity acts much like Section 6002 immunity, by which a witness would be forced to testify or face possible contempt sanctions.

greater than 14 days.  Under Appendix C of the Master Agreement, the attempt to inflict bodily injury on another is punishable by removal.  Furthermore, the refusal to cooperate in any official government investigation, including a refusal to answer questions or attempting to influence others, is punishable by removal.  Finally, the falsification, misstatement, exaggeration, or concealment of a material fact in regard to any record or investigation is punishable by removal.[3]

In this case, the Field Report and the Use of Force Report were used by SDUSM Rivers to obtain an investigatory statement from Mr. Cook without affording Mr. Cook his right to notification of the investigation against him and the right to secure Union representation.  Both the Field Report and the Use of Force Report are required to be compiled by a DUSM upon the command of a supervisor.  Thus, SDUSM Rivers was able to abuse official means to obtain both an investigatory statement from Mr. Cook that could be used in the administrative investigation, but also statements from Mr. Cook to be used in the subsequent criminal investigation and prosecution.

Essentially, Mr. Cook is suggesting that SDUSM Rivers initiated the criminal investigation against Mr. Cook immediately after Hunter filed his complaint, as SDUSM Rivers intended to use Mr. Cook, whether innocent or not, as a scapegoat for the failings of the United States Marshals Service at the District of Columbia Superior Court.  See Defendant Cook's Motion to Dismiss Indictment Based Upon Outrageous Government Misconduct (filed simultaneously).  Because his statements were involuntarily compelled and because SDUSM Rivers obtained these statements through coercive means, the statements should be suppressed.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS**

---

[3] See Attachment 1, Table of Offenses.

## INVOLUNTARY STATEMENTS

The Supreme Court has held that "[t]he prosecution must not be allowed to build its case against a criminal defendant with evidence acquired in contravention of constitutional guarantees and their corresponding judicially created protections." Michigan v. Harvey, 494 U.S. 344, 351 (1990). In this case, the use of Mr. Cook's coerced and compelled statements against himself will violate the Fifth Amendment's guarantee of due process and the privilege against self-incrimination.

I.  **THE USE OF MR. COOK'S INVOLUNTARY STATEMENTS IN THE CRIMINAL PROSECUTION AGAINST HIM VIOLATES HIS FIFTH AMENDMENT DUE PROCESS RIGHTS**

"It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction." Jackson v. Denno, 378 U.S. 368, 376 (1964). The reasoning is that "in cases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction wrings a confession out of an accused against his will." Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973) (quoting Culombe v. Connecticut, 367 U.S. 568, 581-84 (1961)).

The Court has "mandated the exclusion of reliable and probative evidence for *all* purposes... when it is derived from involuntary statements." Harvey, 494 U.S. at 351 (citing New Jersey v. Portash, 440 U.S. 450, 459 (1979)). "*[A]ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law." Portash, 440 U.S. at 459 (quoting

5

Mincey v. Arizona, 437 U.S. 385, 398 (1978)) ("The information given in response to a grant of immunity may well be more reliable than information beaten from a helpless defendant, but it is no less compelled.").

    The District Court of the District of Columbia has held that:

> [i]n determining whether a defendant's statements were voluntary, a court must assess whether, under the totality of the circumstances, law enforcement official obtained the evidence by overbearing the will of the accused. The Supreme Court has emphasized that some form of government overreaching is required for a statement to be involuntary.

United States v. Hsin-Yung, 97 F.Supp.2d 24 (D.D.C. 2000). See also United States v. Pelham, 749 F. Supp. 304, 312 (D.D.C. 1990) (holding that the "totality of the circumstances surrounding the police questioning" must demonstrate that the "defendant's statements were the product of 'police overreaching' or 'coercive police conduct.'"). A defendant's statements are "admissible only if they were made of [Defendant's] own free will." United States v. Henry, 797 F. Supp. 1 (D.D.C. 1992). The D.C. Circuit has eloquently held that:

> The make-up of a free man includes his mechanisms for self-preservation, to refrain from speech that may endanger him. If he does speak out his statement is admissible as the reflection of his free will if his self-preservation mechanism, and its impetus to silence, is overridden by pressures within his own personality, by his own conscience, religious feelings, sense of duty, etc. But his statement does not reflect his own free will or intellect if his statement is attributable in critical measure to the fact that his self-protective mechanism is negated or overridden by external force or fraud, a condition of insanity, the compulsion of drugs.

Pea v. United States, 397 F.2d 627, 634 (D.C. Cir. 1967) (overruled on other grounds).

    In this case, the totality of the circumstances reveal that Mr. Cook's statements were obtained by government overreaching and coercive government conduct. Thus, Mr. Cook's statements were not made under his own free will. First, it is apparent from the USMS Manual

of Policies and Procedures that there are certain procedural safeguards required when taking an investigatory statement from an employee of the United States Marshals Service.  At the time that SDUSM Rivers ordered Mr. Cook to make a statement through the Field Report and the Use of Force Report, an investigation had already begun into Mr. Cook, precipitated by Hunter's filing of a complaint.  Thus, Mr. Cook should have received all the rights and privileges reserved for the subject of an investigation.  SDUSM River's use of the Field Report and the Use of Force Report insidiously circumvented these requirements.

Furthermore, the refusal to cooperate in an investigation into an incident could result in Mr. Cook's dismissal from his position as a Deputy United States Marshal.[4]  Thus, Mr. Cook had the threat of dismissal coercing him to make an involuntary statement in the Field Report and the Use of Force Report.

The coercive threat of dismissal is not only apparent from the language of the plain language of the USMS policies and procedures.  Mr. Cook subjectively believed that SDUSM Rivers was looking for a reason to sanction or dismiss Mr. Cook.  Mr. Cook was under the impression from SDUSM Rivers' actions that SDUSM River's did not think Mr. Cook 'fit the mold' of a Deputy United States Marshal.  On a variety of occasions, SDUSM reprimanded Mr. Cook for behavior that other Deputy Marshals engaged in with impunity.[5]  Thus, despite protesting that there was no reason to write the Use of Force Report, Mr. Cook acquiesced to SDUSM River's demand, for reasonable fear that SDUSM River's would sanction Mr. Cook to

---

[4] See Attachment 1.

[5] See Attachment 2 (demonstrating a memorandum that Rivers' ordered Mr. Cook to write concerning a practice that other Marshals are not punished for).

7

possible dismissal for non-compliance.

Also, the lack of a Garrity warning[6] given to Mr. Cook before his statements were demanded indicates that this was a criminal investigation from the beginning. The lack of a Garrity warning for Mr. Cook concerning his statements demonstrates that the investigation into both the alleged incident involving Hunter and the alleged cover-up had already began at the time that SDUSM Rivers ordered Mr. Cook to make his statements. Mr. Cook's supervisor was attempting to obtain information that could be used to prosecute Mr. Cook. Moreover, the lack of a Garrity warning indicates that Mr. Cook's statements were not merely compelled over his Fifth Amendment privilege against self-incrimination, but instead his statements were coerced against his Fifth Amendment due process rights.

Thus, this coercive element makes the statement involuntary. The statements were obtained by SDUSM Rivers' overreaching and coercive conduct, by utilizing official, legitimate measures to circumvent Mr. Cook's procedural rights. Mr. Cook did not make the statements under his own free will, but rather his "self-protective mechanism [was] overridden" by the external coercion of SDUSM Rivers. See Pea, 397 F.2d at 634.

Moreover, the falsity or truth of the statements is irrelevant where the statements are involuntary obtained through coercion. See Denno, 378 U.S. at 376. A court would never hold a defendant criminally liable for false statements obtained through torture. Nor should a court hold that involuntary statements derived from psychological coercion can be admitted into evidence concerning charges of making false statements. Thus, because Mr. Cook's statements were psychologically coerced through SDUSM Rivers' overreaching conduct, the Court should find

---

[6] See infra Part II.

that the statements contained in his Field Report and Use of Force Report are inadmissible.

## II. THE USE OF MR. COOK'S STATEMENTS OBTAINED IN CONTRAVENTION OF THE FIFTH AMENDMENT, VIOLATES HIS RIGHT AGAINST SELF-INCRIMINATION

Furthermore, even if the Court finds that the method by which Mr. Cook's statements were obtained was not impermissibly coercive against his due process rights, the Court should find that Mr. Cook's statements were compelled against his privilege against self-incrimination. The seminal case regarding statements obtained from law enforcement official under threat of dismissal is Garrity v. State of N.J. 385 U.S. 493, 500 (1967) ("We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."). In Garrity, the Supreme Court found that "[t]he choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent." Id. at 497.

"The D.C. Circuit has held that an officer claiming the protection of Garrity must have in fact believed his statements to be compelled on threat of loss of job, and this belief must have been objectively reasonable." United States v. Trevino, 215 Fed.Appx. 319 (5th Cir. 2007) (quoting United States v. Friedrick, 842 F.2d 382, 395 (D.C. Cir. 1988)). Furthermore, "[n]either Indorato or Garrity rules out the possibility that implied threats could violate a defendant's Garrity rights." Trevino, 215 Fed.Appx. at 321. "In the absence of a direct threat, we determine whether the officer's statements were compelled by examining her belief and, more importantly,

the objective circumstances surrounding it." Id. at 321-22 (quoting United States v. Vangates, 287 F.3d 1315, 1321-22 (11th Cir. 2002)).

However, "[i]t is clear that any statements made to the internal affairs office by an officer cannot be used against the office in criminal proceedings- making a statement under the threat of losing one's job is compelled testimony." United States v. Doe, 434 F.Supp.2d 377 (E.D. Va. 2006). "Under these circumstances, no specific grant of immunity is necessary: 'It is the very fact that the testimony was compelled which prevents its use in subsequent proceedings, not any affirmative tender of immunity.'" Sher v. U.S. Dept. of Veterans Affairs, 488 F.3d 489 (1st Cir. 2007)(quoting Gulden v. McCorkle, 680 F.2d 1070, 1075 (5th Cir. 1982); United States v. Veal, 153 F.3d 1233, 1239n.4 (11th Cir. 1998)).  See also Uniformed Sanitation Men v. Comm'r of Sanitation, 426 F.2d 619, 626 (2d Cir. 1970) (holding that when an employee is subject to adverse employment action as a result of her refusal to make a statement, "the very act of... telling the witness that he would be subject to removal if he refused to answer was held to have conferred such immunity").

Importantly for this case, a grant of Garrity immunity for compelled statements does not cover the "prosecution for collateral crimes such as perjury or obstruction of justice." McKinley v. City of Mansfield, 404 F.3d 418, 427 (6th Cir. 2005). "As a matter of Fifth Amendment right, Garrity precludes use of public employees' compelled incriminating statements in a later prosecution for the conduct under investigation." Id. Thus, where statements are compelled from a person, and the subject of the investigation is possible crimes involving falsification and obstruction, Garrity immunity prevents the statements from being used in the subsequent falsification and obstruction criminal trial. Id.

10

In this case, it is clear that Mr. Cook's statements were compelled under the threat of adverse employment action. The United States Marshals Service procedures and policies specifically makes the refusal to answer an investigatory question or file an investigatory report punishable by removal from employment. While SDUSM Rivers did not make the threat of removal for failure to file the investigatory reports explicit, the threat of removal was certainly implied. A reasonable person would have been aware that an investigation had commenced concerning Hunter's alleged incident, as evinced by SDUSM Rivers' display of the complaint. Furthermore, Mr. Cook was aware of the consequences of failing to make an investigatory statement as contained in the USMS procedures and policies. Moreover, Mr. Cook was also subjectively aware of SDUSM Rivers' agenda to drive Mr. Cook out of the Marshals Service. Taken together, all of these circumstances, both objective and subjective, demonstrate that Mr. Cook was subjected to an implied threat of adverse employment action as a result of his failure to make a statement in the Field Report and the Use of Force Report. Thus, <u>Garrity</u> immunity automatically attaches to the statements that he made in these reports, and these statements cannot be used in the criminal case prosecuting the subject of the internal investigation.

First, without a doubt, the alleged violation of 18 U.S.C. § 242 is covered by Mr. Cook's <u>Garrity</u> immunity. Mr. Cook submits, however, that at the time that his statements were made he was already under investigation for the alleged cover-up of the incident involving Hunter. This is because Hunter had already submitted his complaint to the United States Marshals Service. Previous to the complaint being submitted, Mr. Cook had not filed a Field Report or Use of Force Report regarding the incident, because Mr. Cook was not aware of any incident taking place. Thus, Hunter's complaint plus the lack of a Field Report or Use of Field Report raised the

11

inference with SDUSM Rivers and the investigatory office that Mr. Cook had attempted to cover up the incident. Requiring Mr. Cook to make his statement in the reports was SDUSM Rivers' attempt at catching Mr. Cook trying to cover-up the incident.

Even more so, the compelled statement in the Use of Force Report was clearly compelled as part of the investigation into Mr. Cook's alleged cover-up of the Hunter incident. After Mr. Cook had submitted the Field Report, SDUSM Rivers then required Mr. Cook to also submit the Use of Force Report, although both reports basically accomplish the same purpose. There was no reason for SDUSM Rivers to require Mr. Cook to submit the Use of Force Report unless SDUSM Rivers was attempting to catch Mr. Cook in alleged obstructive activities.

Therefore, because Mr. Cook's statements were compelled under the threat of adverse employment actions and because the underlying investigation concerned Mr. Cook's cover-up activities surrounding the incident, the Court should find that Mr. Cook's statements in both the Field Report and the Use of Force Report are inadmissible in the criminal trial. In the alternative, if the Court does not find that the investigation being conducted by SDUSM Rivers concerned Mr. Cook's obstructive activities, then the Court should at the least hold that the statements are inadmissible concerning the 18 U.S.C. § 242 charge. Further, in the alternative, if the Court finds that the statement in the Field Report did not concern an investigation into Mr. Cook's obstructive activities, the Court should hold that the statement in the Use of Force Report did concern Mr. Cook's obstructive activities and hold the statement in the Use of Force Report to be inadmissible.

## CONCLUSION

WHEREFORE, Mr. Cook respectfully moves this Court to exclude his statements made

in his Field Report and his Use of Force Report because the statements were coerced and involuntary, against his due process rights or because the statements were compelled under the threat of adverse employment action, conferring upon the statements <u>Garrity</u> immunity.

                                        Respectfully Submitted,

                                        **/s/ William B. Moffitt**
                                        WILLIAM B. MOFFITT
                                        Moffitt & Brodnax, Ltd.
                                        11582 Greenwich Point Road
                                        Reston, VA 20194
                                        Phone: (703) 834-0204
                                        Fax: (703) 834-0206
                                        Email: wbmoffitt_esq@yahoo.com

**CERTIFICATE OF SERVICE**

  The undersigned attorney hereby certifies that the **Motion to Suppress Involuntary Statements** was served upon the following individual on September 28, 2007 by electronic means through the ECF system:

John M. Cummings
U.S. Attorney's Office
555 Fourth Street, NW
Washington, DC 20530
(202) 305-1637

                  Respectfully Submitted,

                  **/s/ William B. Moffitt**
                  WILLIAM B. MOFFITT
                  Moffitt & Brodnax, Ltd.
                  11582 Greenwich Point Road
                  Reston, VA 20194
                  Phone: (703) 834-0204
                  Fax: (703) 834-0206
                  Email: wbmoffitt_esq@yahoo.com

DEPARTMENT OF JUSTICE AND U.S. MARSHALS SERVICE
TABLE OF OFFENSES AND PENALTIES—Continued

| DOJ OFFENSES | | DISCIPLINE | | | Reckoning Period |
|---|---|---|---|---|---|
| Nature | Explanation | First Offense | Second Offense | Third Offense | |
| 22. Falsification, misstatement, exaggeration, or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding. | Includes, but is not limited to, the destruction of records to conceal facts, and a concealed conflict of interest in the performance of official duties. | Reprimand to removal | 15-day susp to removal | Removal | 2 years |
| 23. Discrimination in official action against an employee or applicant because of race, religion, sex, national origin, age, handicapping condition, or any reprisal action taken against an employee for filing a discrimination complaint, grievance, or complaint with the Special Council, MSPB. | | Reprimand to removal | 15-day susp to removal | Removal | 2 years |

## DEPARTMENT OF JUSTICE AND U.S. MARSHALS SERVICE
## TABLE OF OFFENSES AND PENALTIES—Continued

| DOJ OFFENSES | | DISCIPLINE | | | Reckoning Period |
|---|---|---|---|---|---|
| Nature | Explanation | First Offense | Second Offense | Third Offense | |
| 19. Refusal to cooperate in any official U.S. Gov't inquiry or investigation, including a refusal to answer work related questions or attempting to influence others involved in inquiry. | Includes administrative or criminal investigation, grievance inquiry, EEO investigation, and any other administrative inquiry. | Reprimand to removal | 15-day susp to removal | Removal | 2 years |
| 20. Reporting for duty or being on duty under the influence of intoxicants or other drugs; unauthorized possession of intoxicants or drugs on Gov't owned or leased premises. | | Reprimand to removal | 15-day susp to removal | 30-day susp to removal | 2 years |
| 21. Criminal, dishonest, infamous, or notoriously disrespectful conduct. | On or off duty. | Reprimand to removal | 15-day susp to removal | Removal | 2 years |

## DEPARTMENT OF JUSTICE AND U.S. MARSHALS SERVICE
## TABLE OF OFFENSES AND PENALTIES—Continued

| DOJ OFFENSES | | DISCIPLINE | | | Reckoning Period |
|---|---|---|---|---|---|
| Nature | Explanation | First Offense | Second Offense | Third Offense | |
| 16. Conversion of Gov't funds to personal use. | Includes, but is not limited to, travel advances impress funds, or amounts received as collections. | Reprimand to removal | 15-day susp to removal | Removal | 2 years |
| 17. Disorderly conduct, fighting, threatening, or attempting to inflict bodily injury to another, engaging in dangerous horseplay. | | Reprimand to removal | 15-day susp to removal | Removal | 2 years |
| 18. Disrespectful conduct; use of insulting, abusive, or obscene language to or about others. | | Reprimand to removal | 15-day susp removal | Removal | 2 years |



DEPARTMENT OF JUSTICE
U.S. MARSHALS SERVICE

# Memo

Date:    9/21/2005

From:    DUSM Steve Cook

To:      SDUSM Paul Rivers

Subject: Cell Block Doors

On 9/20/2005, I left the P door open behind court room C-10.