IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CR-192 |
| | ) | |
| STEPHEN COOK, | ) | Hon. Ellen S. Huvelle |
| | ) | |
| Defendant. | ) | |

**DEFENDANT STEPHEN COOK'S MOTION TO DISMISS THE INDICTMENT BASED UPON OUTRAGEOUS GOVERNMENT MISCONDUCT AND ENTRAPMENT**

NOW COMES, Defendant Stephen Cook, by and through undersigned counsel, respectfully moving this Court to dismiss the indictment based upon outrageous governmental misconduct and entrapment. In support of this motion, Mr. Cook states as follows:

## INTRODUCTION

Mr. Cook has been charged with a seven count indictment alleging violations of 18 U.S.C. §§ 242, 371, 1001, and 1512. All of the counts stem from an incident that allegedly occurred in the District of Columbia Superior Court involving Deputy United States Marshal Cook and a person in custody, Omar Hunter. All of the Counts stem an alleged cover-up from this incident alleged in Count One. Mr. Cook suggests to the Court that the investigation surrounding Counts Two, Three, Four, Five, Six, and Seven has risen to the level of outrageous governmental misconduct, necessitating that these counts be dismissed.

For years preceding the alleged incident involving Omar Hunter on August 30, 2005, the problems concerning the United States Marshal Service for the District of Columbia Superior Court have been widely reported in the media. In September of 2007, the United States Department of Justice Office of the Inspector General issued a scathing report of the substandard

1

health, safety, and security conditions at the District of Columbia Superior Court.  U.S.
Department of Justice, Health, Safety, and Security Conditions in the H. Carl Moultrie I
Courthouse Space Utilized by the U.S. Marshal for the District of Columbia Superior Court
(Sept. 2007) (hereinafter "DOJ Report").  "The report cited 166 failures to meet federal standards
at the... courthouse."  Keith L. Alexander, Inspector Cites Security Deficiencies, Wash. Post B04
(Sept. 18, 2007) (Indicating that the report "highlighted problems the marshals have raised with
the D.C. courts for more than 10 years").  Mr. Cook alleges that he has become a scapegoat for
the myriad of problems with the United States Marshal's Service for the D.C. Superior Court.

Further leading to his despicable treatment during the investigation of a highly suspect
complaint made by a highly suspect complainant, Mr. Hunter, who has alleged misconduct while
in custody on numerous previous occasions, is the fact that Mr. Cook was and is disfavored by
his supervisor, Paul Rivers.  Supervisory Deputy United States Marshal Rivers has constantly
singled out Mr. Cook for certain 'violations' that other DUSM's are not singled out concerning.
For instance, on one occasion, SDUSM Rivers ordered Mr. Cook to write a memorandum
concerning an incident where Mr. Cook left a door to a courtroom open, despite the fact that
other DUSM's had previously left the door open without repercussion from SDUSM Rivers.[1]

Besides these petty incidents, SDUSM Rivers behavior toward Mr. Cook became
increasingly detestable after Omar Hunter filed the complaint against Mr. Cook.  Under the
USMS Procedures and Policies, an employee of the Marshals Service is entitled to a chance to
obtain union representation when a complaint has been filed against him.  This is particularly

---

[1] See Attachment 1.

true where the complaint filed against an employee can lead to sanctions over 14 days.[2]  Instead

of apprising Mr. Cook of his right to union representation and the fact that an investigation had

been instigated regarding the alleged incident with Hunter and the alleged cover-up, SDUSM

Rivers compelled Mr. Cook to write a Field Report and a Use of Force Report involving the

incident with Hunter.  Despite Mr. Cook's protest that he should not have to write a report

because no incident had occurred, Mr. Cook acquiesced to SDUSM Rivers' order out of fear of

employment sanctions.  These statements, coerced by his supervisor, now make up the basis of

the indictment against Mr. Cook.

Furthermore, after coercing Mr. Cook to make his statements, Rivers continued his own

personal vendetta against Mr. Cook by coercing other DUSM's to make statements regarding the

Hunter incident.  At the time, Mr. Cook was unaware that such an extensive investigation was

being conducted.

Moreover, and most insidiously, persons have alleged that after receiving the reports from

the other DUSM's, Rivers was overheard demanding that the other DUSM's change their initial

reports, presumably to align with Omar Hunter's version of the incident.  Other persons have

alleged that, wanting to cover his own tracks in this malicious investigation of Mr. Cook, Rivers

has requested various employees to change their reports to indicate that Rivers was not involved

in the investigation.[3]

Beyond the hideous behavior of Mr. Cook's supervisor, the FBI, in continuing this

---

[2] See Attachment 2.

[3] At this time, an investigator is examining various witnesses' claims of misconduct by SDUSM Rivers. When the investigator has substantiated such allegations, Mr. Cook will submit the appropriate affidavits to the Court.

investigation, also continued the series of transgressions against Mr. Cook's rights. To manufacture charges of witness tampering against Mr. Cook, the FBI had DUSM Brian Behringer place various phone calls to Mr. Cook in an attempt to trap Mr. Cook in obstructive behavior. The FBI had Behringer call Mr. Cook and had Behringer express his fear of testifying before the grand jury. Now the government is attempting to use Mr. Cook's assurances to a audibly distressed Behringer, that if Behringer stuck to his report, he would not get in trouble for perjury. Such assurances given to a distressed friend are now the bases for the conspiracy count and four witness tampering charges.

In the aggregate, all of this behavior on the part of the government in investigating Mr. Cook demonstrates outrageous government conduct that violates Mr. Cook's due process rights.

## I. THE INDICTMENT SHOULD BE DISMISSED BASED UPON THE OUTRAGEOUS GOVERNMENTAL MISCONDUCT THAT HAS VIOLATED MR. COOK'S CONSTITUTIONAL RIGHTS

"[T]he existence of a due process violation must turn on whether the government conduct, standing alone, is so offensive that it 'shocks the conscience.' United States v. Chin, 934 F.2d 393 (2d Cir. 1991) (citing Rochin v. California, 342 U.S. 165, 172 (1952)). The D.C. Circuit has held that:

> Precedent dictates that we refrain from applying the general due process constraint to bar a conviction except in the rare instance of police overinvolvement in crime that reaches a demonstrable level of outrageousness.... The requisite level of outrageousness... is not transgressed absent coercion, violence, or brutality to the person.

United States v. Kelly, 707 F.2d 1460, 1476 (D.C. Cir. 1983).

In this case, the coercion upon Mr. Cook's investigation rises to the level of outrageousness. In the aggregate, these coercive transgressions should bar prosecution of Mr.

Cook.

First, Mr. Cook's Fifth Amendment due process and self-incrimination rights have been violated by SDUSM coercing involuntary statements from him regarding the alleged Hunter incident and the alleged cover-up.  See Motion to Suppress Involuntary Statements (filed simultaneously).

Furthermore, Mr. Cook's administrative rights have been violated when investigatory statements were compelled from him and where he was not afforded the opportunity to seek union representation.  Essentially, this investigation has been run the same way by the same kind of intimidation that was used against Mr. Cook to get his involuntary statement.

This behavior on the part of the government is particularly egregious based upon the fact that Mr. Cook is also a law enforcement officer.  Mr. Cook is aware of the appropriate safeguards that law enforcement officials must engage in to investigate crimes but protect the rights of the innocent as well.  This behavior of the government, that flies in the face of fair play, is a slap in the face to a law enforcement officer who believes that 'justice' should be of the utmost concern to the criminal justice system.

Mr. Cook is being unfairly prosecuted for the years of violations at the United States Marshals Service in the D.C. Superior Court.  See DOJ Report, supra.  The government is using this opportunity to overzealously prosecute Mr. Cook, using abhorrent investigatory means, in an attempt to redress the years of corruption and failings of the USMS in the D.C. Superior Court. The government hopes that the prosecution of one DUSM, despite the probability of the DUSM's innocence, will change the public's perception regarding this historically derided section of the Marshals Service.  Such a use of the criminal justice system is blatantly outrageous.

SDUSM Rivers conducted this investigation personally, and he did not rely on internal affairs. This whole investigation has a taste of irregularity. The appropriate group to investigate an alleged violation by a Deputy United States Marshal would be the Internal Affairs section. Rivers took on the investigation by himself. Rivers' entire investigation was outside of the normal procedures of the Marshals Service. He turned what should have been an administrative investigation of Mr. Cook into his own private vendetta.[4]

A.    **Mr. Cook's Due Process Rights Have Been Violated Because the Investigators Have Falsified Evidence Against Him**

"We are persuaded that there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001). "[T]he wrongfulness of charging someone on the basis of deliberately fabricated evidence is sufficiently obvious... that the right to be free from such charges is a constitutional right." Id. at 1075. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997). Specifically, the use of perjured testimony to convict a defendant is a violation of the defendant's due process rights. Pyle v. Kansas, 317 U.S. 213, 216 (1942).

In this case, if the allegations against SDUSM Rivers are true and he caused various

---

[4] See Attachment 2 (indicating that violations that result in punishment greater than 14 days are conducted by the Internal Affairs Office). Furthermore, though, the fact that Internal Affairs was not involved indicates that the investigation into Mr. Cook was a criminal investigation at the outset, all be it a criminal investigation conducted by one Supervisory Deputy United States Marshal. See Motion to Suppress Involuntary Statements.

DUSM's to change their reports of the Hunter incident to parallel Hunter's allegations against Mr. Cook, then SDUSM has fabricated evidence against Mr. Cook that has violated his constitutional rights to a fair trial. Many of these SDUSM reports are being proffered by the government as evidence against Mr. Cook, not only concerning the alleged assault on Hunter, but also concerning the alleged cover-up of the incident.

Furthermore, there is indication that the government has pressured and coerced various witnesses to change their testimony in exchange for preferential treatment. The use of such perjured testimony against Mr. Cook violates his due process rights.

**B.     Mr. Cook's Due Process Rights Have Been Violated by Entrapment**

"Entrapment, normally recognized as a defense in criminal cases, can be so outrageous as to be illegal because it deprives the defendant of due process of law." Wager v. Pro, 603 F.2d 1005, 1009 (D.C. Cir. 1979). The test for entrapment has been developed by the Supreme Court in United States v. Russell, 411 U.S. 423 (1973). In that case, the Supreme Court "reaffirmed the 'subjective' definition of entrapment... which limits the defense to defendants who can demonstrate a lack of predisposition to commit the charged offense.... In so doing, the Court explicitly rejected an objective definition of entrapment, which would focus not on the defendant's predisposition, but on whether the government instigated the crime." United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991) (citing Russell, 411 U.S. at 433). The D.C. Circuit has held that in considering an entrapment claim, "the controlling question is whether government agents implanted in the mind of an innocent person the disposition to commit the alleged offense and induced its commission in order that they may prosecute." United States v. McKinley, 70 F.3d 1307, 1311-12 (D.C. Cir. 1995).

7

Here it is apparent that Mr. Cook had not predisposition to commit the witness tampering charges.  There is no indication that Mr. Cook would have ever contacted Mr. Behringer.  During every phone call, on September 28, October 23, and October 24, 2006,  the contact was initiated by Mr. Behringer at the behest of the FBI.  Furthermore, during the telephone conversations between Mr. Behringer and Mr. Cook, Mr. Behringer, a former friend of Mr. Cook, incessantly asked Mr. Cook about whether he would get in trouble in front of the grand jury.  Mr. Cook repeatedly attempted to assuage Mr. Behringer's fears by telling him that if he stuck to his original report, Mr. Behringer would not get in trouble.  This is a blatant attempt by the FBI, through Mr. Behringer, to attempt to get Mr. Cook to tamper with Mr. Behringer's testimony.

Now, in the indictment, the government is alleging that Mr. Cook tampered with Mr. Behringer's testimony on two separate occasions, the September 28 and October 23 phone calls between Mr. Cook and Mr. Behringer.  The government is alleging that Mr. Cook's statements that 'you did not do anything wrong and you will not get in trouble if you stick to your report' is somehow witness tampering.  These responses were merely justifiable remarks made to assuage the fear of a friend who called Mr. Cook during a time of crisis.  Instead, however, the government is removing these responses to Mr. Behringer's statements out of context and using them for the basis of criminal culpability.  This is the essence of entrapment; the government initiating contact between an informant and an non-predisposed defendant, and then distorting the response of the non-predisposed defendant in order to attempt to make it fit a criminal violation.  These phone conversations are the central evidence underlying Counts Four, Five, Six, and Seven, as well as a substantial part of the conspiracy charge.  This behavior on the part of the FBI, while independently establishing an entrapment defense, also demonstrates further

outrageous governmental conduct that violates Mr. Cook's due process rights.

## CONCLUSION

WHEREFORE, Mr. Cook has demonstrated that the government has engaged in outrageous misconduct that 'shocks the conscience' and violates his due process rights, Mr. Cook respectfully requests that the Court dismiss the indictment.

Respectfully Submitted,

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
11582 Greenwich Point Road
Reston, VA 20194
Phone: (703) 834-0204
Fax: (703) 834-0206
Email: wbmoffitt_esq@yahoo.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that the **Motion to Dismiss the Indictment Based Upon Outrageous Government Conduct** was served upon the following individual on September 28, 2007 by electronic means through the ECF system:

John M. Cummings
U.S. Attorney's Office
555 Fourth Street, NW
Washington, DC 20530
(202) 305-1637

                                        Respectfully Submitted,

                                        **/s/ William B. Moffitt**
                                        WILLIAM B. MOFFITT
                                        Moffitt & Brodnax, Ltd.
                                        11582 Greenwich Point Road
                                        Reston, VA 20194
                                        Phone: (703) 834-0204
                                        Fax: (703) 834-0206
                                        Email: wbmoffitt_esq@yahoo.com

10



DEPARTMENT OF JUSTICE
## U.S. MARSHALS SERVICE

# Memo

**Date:**    9/21/2005

**From:**    DUSM Steve Cook

**To:**    SDUSM Paul Rivers

**Subject:** Cell Block Doors

On 9/20/2005, I left the P door open behind court room C-10.

## Section 2.    Procedures for Taking Investigative Statements

Prior to taking an investigative statement from an employee
in an administrative investigation against whom an allegation
of misconduct has been made and the employee reasonable believes may
result in discipline, the Employer will follow the following
procedures:

   a. In matters where the allegations would result in a penalty of
   14 days or less and the investigation is conducted at the
   district or local office level the following procedures apply:

      1. The Employer will notify the employee that it wishes to take
      a statement from the employee.

      2. Upon request the subject employee will be provided
      reasonable official time to exercise his/her rights and to
      contact the Union representative for advice.

      3. If the employee desires Union representation, he/she has one
      work day to advise the Employer of this request.

      4. If such a request is made, the employee has another
      two days to secure a representative.

      5. If the employee is unable to obtain a representative within
      the three days (72 hours,) time period, then the Employer is
      free to take a statement.

      6. If the employee does not wish to have a representative or
      fails to inform the Employer of his/her desire to have a
      representative within one work day, then the Employer may take
      the statement anytime at the Employer's convenience.

   b. In matters where the allegations would result in a penalty
   greater than 14 days, demotion or removal and the investigation
   is conducted by an official of the Office of Inspections the
   following procedures apply:

      1. The Employer will notify the employee that it wishes to
      take a statement from the employee.

99

2. Upon request, the subject employee will be provided reasonable official time to exercise his/her rights and to contact the Union representative for advice.

3. If the employee desires Union representation, he/she has three work days (72 hours)to secure a representative.

4. If the employee is unable to obtain a representative within the three days (72 hours,) time period, then the Employer is free to take a statement.

5. This provision may be extended upon request.

c. In matters of exigent circumstances when the delay in taking a statement will prejudice the investigative process and or critical security needs require immediate collection of information for the protection of life and property employees will be required to provide the information as soon as possible not to exceed one business day. Employees are still entitled to representative and must secure a representative within one business day.

### Section 3.    Meeting with Union Representatives

Employee and Union representatives will provided reasonable official time to meet with and advise employees subject to disciplinary investigations.

### Section 4.    Notification to Employee

When the Employer conducts an interview of an employee while conducting an administrative investigation, the Employer will notify the employee of the charges and inform him/her that the questions must be answered. Failure of an employee to answer work related questions in an administrative investigation may result in disciplinary action.

### Section 5.    Interviews

Disciplinary interviews will normally be held during regular hours of the basic work week. An employee is entitled to premium pay as provided by law and regulation if the disciplinary interviews are conducted outside normal duty hours.