## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. O7-192 (ESH)** |
| | : | |
| **v.** | : | **JUDGE ELLEN S. HUVELLE** |
| | : | |
| **STEPHEN COOK** | : | **TRIAL OCTOBER 23, 2007** |
| | : | |
| **Defendant.** | | |

## GOVERNMENT'S REPLY TO DEFENDANT COOK'S MOTION TO SUPPRESS HIS INVOLUNTARY STATEMENT MADE IN HIS FIELD AND USE OF FORCE REPORTS

Now comes the government, by and through its undersigned counsel, and replies to "Defendant Stephen Cook's Motion to Suppress His Involuntary Statement Made In His Field and Use of Force Reports" (hereafter "Motion"). In the Motion, the Defendant offers two broad arguments in support of its request for the Court to suppress his Field Report and Use of Force Report in this case. First, the Defendant claims that, by compelling him to compose and submit the aforementioned Field Report and Use of Force Report, the government violated his due process rights by depriving him of certain procedural rights to which he was purportedly entitled under United States Marshals Service (hereafter "USMS") regulations, and by coercing him to compose the reports, all in violation of his right to due process. Second, the Defendant argues that the reports violate his right against self-incrimination pursuant to Garrity vs. New Jersey, 385 U.S. 493 (1967).

The Defendant's first argument fails as a matter of fact and as a matter of law. As the following analysis will demonstrate, the Defendant presents no facts or evidence to prove that his reports were coerced in a manner that violated his right to due process. As the Defendant composed his reports in response to an ordinary request from a supervisor and in accordance with USMS policy, his reports were neither coerced nor generated in violation of the right to due process.

Additionally, the Defendant fails to present any fact or argument to prove that he was the target of an investigation at the time that he composed the reports in question.  To the contrary, the evidence indicates that the Defendant was not the target of any investigation whatsoever when he composed his reports.  Finally, the Defendant fails to present any legal argument to demonstrate that his right to due process would have been violated even if the USMS had failed to extend to him the protections to which he was purportedly entitled.

The Defendant's second argument fails because it rests upon an incorrect understanding of the protections afforded to law enforcement officers under Garrity.  The following analysis will demonstrate that the Defendant had no objectively valid reason to believe that his failure to compose the requested reports would result in his termination; that, as noted above, the Defendant was not the subject of any investigation at the time he composed and submitted the reports; that the reports in question were routine; and that the Defendant elected to compose and file the report rather than assert his right against self-incrimination.  As such, the Defendant's reports are not protected under Garrity and should not be suppressed.

Accordingly, the Defendant's Motion must fail.


I.      **THE DEFENDANT'S REPORTS WERE NOT COERCED FOR PURPOSES OF HIS FIFTH AMENDMENT RIGHT TO DUE PROCESS.**

It is the government's burden to prove, by a preponderance of the evidence, that a defendant's statements were made voluntarily.  Lego v. Twomey, 404 U.S. 477, 488 (1972).  The Defendant argues that his Field Report and Use of Force Report are involuntary statements for purposes of the right to due process, and as such they should be suppressed.  The Defendant presents two arguments

in favor of this position: first, he failed to receive certain procedural protections to which he was purportedly entitled under USMS regulations; second, he reasonably thought that he would lose his job if he did not compose and file his reports when his supervisor, Supervisory Deputy United States Marshal (SDUSM) Paul Rivers, asked him to do so.

The Defendant does not dispute that Rivers simply told him to compose and submit the reports in question. <u>Motion</u> at 2. The Defendant sets forth no other "coercive" act that Rivers took in order to obtain reports from him. As the following analysis will demonstrate, the facts as set forth by the Defendant constitute at least a preponderance of evidence to prove that he composed and submitted his reports voluntarily.

  A. *No legal authority supports the proposition that the alleged violation of the USMS regulatory protections in question constitutes a violation of the right to due process.*

The Defendant claims that, as he was allegedly the subject of a USMS investigation at the time that Rivers asked him to submit the reports, he should have received the additional "procedural safeguards" that USMS regulations afford to Deputy United States Marshals such as the Defendant who become the subjects of investigations. Even assuming that the Defendant was the subject of such an investigation at the time he filed his reports (and that assumption is false; see below), and further assuming that Rivers failed to extend to him the protections that USMS guidelines require for accused deputy marshals, the Defendant offers no legal analysis whatsoever in support of the proposition that a breach of USMS guidelines constitutes a violation of the Constitutional right to due process. In the absence of such authority, the Defendant's claim in this regard must fail.

B.     *The Defendant was not the subject of an investigation at the time that Rivers asked him to compose his Field Report and Use of Force Report.*

As noted above, the Defendant claims that, at the time Rivers asked him to compose his reports about the incident, the Defendant was the subject of a USMS investigation. In support of this assertion, the Defendant argues that Rivers was maliciously inclined to sanction him, and that Rivers failed to give him a <u>Garrity</u> warning before asking him for his statements.

This claim is discussed below, at II-C.

C.     *The Defendant's statements were not coerced for purposes of the right to due process.*

As the Defendant notes in the <u>Motion</u>, it is well-settled that involuntary statements are inadmissible in criminal proceedings. <u>Blackburn v. Alabama</u>, 361 U.S. 199 (1960). In determining the voluntariness of a given statement from a defendant, the Supreme Court noted that "if he [the defendant] has willed to confess, it [the confession] may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process." <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973), <u>citing</u> <u>Culombe v. Connecticut</u>, 367 U.S. 568 (1961), at 602. The Supreme Court in <u>Schneckloth</u> further observed that:

> "In determining whether a defendant's will was over-borne in a particular case, the Court has assessed the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, <u>e.g.</u>, <u>Haley v. Ohio</u>, 332 U.S. 596 [1948]; his lack of education, <u>e.g.</u> <u>Payne v. Arkansas</u>, 356 U.S. 560 [1958]; or his low intelligence, <u>e.g.</u>, <u>Fikes v. Alabama</u>, 352 U.S. 191 [1957]; the lack of any advice to the accused of his constitutional rights, <u>e.g.</u>, <u>Davis v. North Carolina</u>, 384 U.S. 737 [1966]; the length of detention, <u>e.g.</u>, <u>Chambers v. Florida</u>, 309 U.S. 227 [1940]; the repeated and prolonged nature of the questioning, <u>e.g.</u>, <u>Ashcraft v. Tennessee</u>, 322 U.S. 143 [1944]; and the use of physical punishment such as the deprivation of food or sleep, <u>e.g.</u>, <u>Reck v. Pate</u>, 367 U.S. 433 [1961]. In all of these cases, the Court determined the factual circumstances surrounding the

4

confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted.  <u>Culombe v. Connecticut</u>, <u>supra</u>, at 603."  <u>Schneckloth</u>, <u>id.</u> at 226.

It is clear from the above-captioned list of factors that the Defendant's will was not "over-borne" when he composed and filed his Field and Use of Force Reports.  No evidence indicates that the Defendant was under the age of 18 when he filed his reports.  No evidence indicates that the Defendant was particularly uneducated at the time he composed and filed his reports.  No evidence indicates that the Defendant possesses an unusually low intelligence.  No evidence indicates that anyone prevented the Defendant from seeking legal counsel prior to composing or submitting his reports.  No evidence indicates that the Defendant was detained at any time.  No evidence indicates that the Defendant was ever questioned.  No evidence indicates that the Defendant was ever deprived of food, sleep, or any necessity at all.  Even accepting all of the Defendant's representations about the circumstances surrounding the generation of Cook's reports, it is clear that Cook was never exposed to the kind of questioning and custodial pressure that constitute the "heartland" of abusive actions that violate the right to due process.  As the aforementioned case law indicates, violations of due process occur when law enforcement officers apply physical force or psychological torments to suspects in order to extract confessions from them.  The evidence indicates that Rivers did not threaten the Defendant with termination, or compel him to sign a waiver of rights, or subject him to any questioning, or deprive him of the ability to contact counsel, or even require him to compose the reports in an unreasonably short amount of time.  Rivers simply made a request.  To find that such requests constitute "coercion" would be to find that every report that any Deputy United States Marshal (DUSM) files pursuant to a request from a superior officer constitutes a violation of the right to due process.  This unlikely conclusion illustrates the error of the Defendant's arguments.

As Rivers did not "coerce" the Defendant simply by requesting the composition of reports, the Defendant's claim of a violation of the right to due process must fail.

## II. THE ADMISSION OF THE DEFENDANT'S FIELD AND USE OF FORCE REPORTS INTO EVIDENCE DOES NOT VIOLATE HIS RIGHT AGAINST SELF-INCRIMINATION PURSUANT TO GARRITY.

Garrity and its progeny establish three interrelated principles. Morgan v. Tandy, 2000 U.S. Dist. LEXIS 7446 (S.D. Ind. 2000) *11-*12 (outlining Garrity principles). First, if an officer answers questions under an explicit threat that the officer will be fired if he or she invokes the privilege against self-incrimination, the officer's answers cannot be used in a subsequent criminal proceeding. Id. Second, unless the officer has been given at least use immunity, the officer may not be fired for invoking his or her Fifth Amendment privilege. Id. Third, if the officer has been given at least use immunity, the officer may be fired if he or she continues to refuse to answer questions that are specifically, directly, and narrowly related to the officer's performance of official duties. Id.; see United States v. Stein, 233 F.3d 6, 15 & n.4 (1st Cir. 2000).

The protections afforded to the statements of law enforcement officers under Garrity apply *only* when the officer in question is confronted with the choice of giving a statement or invoking Fifth Amendment rights and being fired consequently. See, e.g., Singer v. Maine, 49 F.3d 837, 847 (1st Cir. 1995)(Garrity not implicated because defendant was not "put between the rock and the whirlpool" of incriminating himself or losing his job); Wiley v. Doory, 14 F.3d 993, 996 (4th Cir. 1994)(Garrity protection limited to situation where defendant must choose between job and self-incrimination); United States v. Bowers, 739 F.2d 1050, 1056 (6th Cir.

1984)(holding Garrity not implicated when employee not told he would lose job if he did not

submit to interview); United States v. Indorato, 628 F.2d 711, 716 (1st Cir. 1980)(holding Garrity

rights not implicated when there was no explicit "or else" choice and there was no statute

mandating that employee be fired).  The threat of job loss need not be explicit; indirect coercion

is also prohibited.  See United States v. Vangates, 287 F.3d 1315, 1321-22 (11th Cir. 2002) ("In

the absence of a direct threat" of job loss, courts determine whether an officer's statements were

compelled by examining his or her "belief and, more importantly, the objective circumstances

surrounding it.").

        The D.C. Circuit has held that an officer claiming the protection of Garrity "must have in

fact believed [his] statements to be compelled on threat of loss of job, and this belief must have

been objectively reasonable."  United States v. Friedrick, 842 F.2d 382, 395 (D.C. Cir. 1988).  A

public employee's subjective fear of termination for refusing to answer an employer's questions is

insufficient to trigger Garrity protections; the belief must be objectively reasonable.[1]  United

States v. Vangates, 287 F.3d at 1322 (for statements to be protected under Garrity, the officer

must have believed the statements to be compelled on threat of loss of job and the belief must

have been objectively reasonable); see also United States v. Indorato, 628 F.2d at 716; United

States v. Johnson, 131 F.3d 132, 1997 U.S. App. LEXIS 36363 (2d Cir. 1997)(public official's

alleged belief that he was required to provide information or lose his job, based on his subjective

understanding of his employer's disciplinary rules, does not make statement inadmissible under

---

        [1]  In fact, the First Circuit has held that Garrity applies only if the person being
investigated is explicitly told that failure to waive his constitutional right against
self-incrimination will result in his discharge from public employment and if there is a statute or
municipal ordinance mandating such procedure.  United States v. Stein, 233 F.3d at 16; United
States v. Indorato, 233 F.3d at 716.

7

Garrity); United States v. Camacho, 739 F. Supp. 1504, 1515 (S.D. Fla. 1990)(for Garrity to apply, defendant must have subjectively believed that he was compelled to give a statement upon threat of loss of job and belief must have been objectively reasonable).

In the instant case, the Defendant may not claim any protection for his statements under Garrity. The reports in question were routine, and as such cannot be considered compelled under Garrity. The Defendant had no objectively valid reason to believe that his failure to complete the requested reports would result in the termination of his employment with the United States Marshals Service. No regulation required such an outcome. The Defendant was not the subject of a criminal or administrative investigation at the time Rivers asked him to complete the reports. Finally, the Defendant elected to compose and file the reports, rather than asserting his Fifth Amendment right against self-incrimination. Consequently, the Defendant's reports are not protected under Garrity, and thus the Defendant's Motion must fail.

> A. *The Defendant's reports were routine, and as such do not full under the protection of Garrity.*

In the D.C. Circuit, routine, contemporaneously prepared incident reports are not considered compelled statements per Garrity. Devine v. Goodstein, 680 F.2d 243, 247 (D.C. Cir. 1982)(holding public employee could not have reasonably believed preparation of routine report would be used in criminal prosecution); see also United States v. Rios Ruiz, 579 F.2d 670, 675-76 (1st Cir. 1978)(introduction of arrest report did not violate privilege against self-incrimination); Watson v. County of Riverside, 976 F. Supp. 951, 954-55 (C.D. Cal. 1997) (when the filing of a report is a requirement of an officer's job, no Garrity protections will attach to that report).

Field Reports and Use of Force Reports are documents routinely used in the USMS to memorialize a wide variety of mundane events.[2]  A blank copy of a USM-133 (Use of Force Report) is attached to this reply as Attachment 1.  The instructions for this document indicate that, as a matter of policy, DUSMs are to complete this form whenever "physical force greater than minor restraint" is used, or when the DUSM "is the victim of a physical assault while performing a lawful duty."  Attachment 1, at 3.  These instructions reveal two critical facts.  First, as USMS policy requires DUSMs to use the USM-133 to document instances in which the composing DUSM is clearly blameless (i.e. when the DUSM was assaulted while on duty), the USM-133 is not necessarily a predicate to an investigation in which the composing DUSM is a target.  Second, as the USM-133 indicates that DUSMs involved in even a minor use of force must fill out and submit the form within 24 hours of the incident, Attachment 1 at 3, it is clear that USMS policy required the Defendant to compose at least a Use of Force Report in regard to the incident on August 30, 2005, *irrespective of Rivers' request*.[3]  It is uncontested that, in the Defendant's reports, he wrote that he "assisted Mr. Hunter out of the van" when Hunter allegedly failed to obey the Defendant's orders to leave the van.  Motion at 2.  As the Defendant had to apply physical force greater than minor restraint by "assisting" Hunter from the van, USMS

---

[2]  Should the Court require additional evidence in support of this fact, the government can present substantial testimony from USMS supervisors.

[3]  It is uncontested that the contents of the Defendant's Use of Force Report are identical to the contents of his Field Report.  Motion at 2, fn 1.  As the USMS policy required the Defendant to submit at least a Use of Force Report as a result of the February 28, 2005, incident, the question of the admissibility of his Field Report is moot.

policy required the Defendant to compose and submit a USM-133 in regard to the incident.[4]

Rivers was merely enforcing that policy when he made his request. Thus, Cook's Field and Use

of Force Reports were made according to the ordinary requirements of his position, and hence

cannot be considered "compelled" for <u>Garrity</u> purposes. Accordingly, the Defendant's <u>Motion</u>

must fail.

> B.    *The Defendant had no objective reason to believe that his failure to complete the reports would result in the termination of his employment.*

The Defendant claims that, at the time he composed and submitted his Field and Use of

Force reports, he believed that he would be terminated from his employment as a law

enforcement officer if he failed to do so. The Defendant's arguments in this regard are factually

and legally incorrect.

> 1.    <u>The evidence does not indicate that any USMS regulation would have required the Defendant's termination, had he elected not to file his reports.</u>

The Defendant claims that "United States Marshals Service procedures and policies

specifically makes [*sic*] the refusal to answer an investigatory question or file an investigatory

report punishable by removal from employment." <u>Motion</u> at 11. In support of this claim, the

Defendant submits <u>Motion Attachment 1</u>, a document purporting to be a "Department of Justice

and U.S. Marshals Service Table of Offenses and Penalties," which appears to set forth the

possible penalties that attach to violations of USMS regulations. Even assuming that this

document is valid and that its contents applied to the Defendant's conduct at the time that Rivers

---

[4] It is the Government's position that the Defendant's use of force went well beyond simple "assistance," and that the Defendant repeatedly struck and kicked Mr. Hunter while Mr. Hunter was on the ground, handcuffed to another inmate.

told him to compose and file the reports, this document provides no support to the claim that the

Defendant would have been terminated if he did not file the requested report. The penalties

attached to first offenses for concealment of material fact in connection with employment

(Motion Attachment 1, at 1), refusal to cooperate in an official inquiry or investigation (id., at 2),

or dishonest conduct (id.) are the same: "Reprimand to removal." "Removal" is only a

compulsory penalty for third offenses, and no evidence indicates that the Defendant committed

any prior offenses with the USMS whatsoever.

      The fact that the USMS guidelines fail to *mandate* termination for a refusal to cooperate

with an investigation is fatal to the Defendant's claim in this regard. In United States v. Indorato,

628 F.2d at 715-716, a police officer claimed that, because the applicable police rules allowed for

the *possibility* of dismissal for officers who disobeyed superior officers, he believed that he

would be terminated if he failed to answer a superior officer's questions; thus, his responses to

those questions ought to be suppressed under Garrity. Indorato, id. at 715-716. The First Circuit

found no merit to this argument, noting that, as "dismissal would not have automatically

followed defendant's invocation of the fifth amendment [*sic*]," Garrity did not protect the

officer's statements. Indorato, id. at 716. The same principle should be applied in this case.

      Sanctions short of mandatory termination for failure to give a statement do not trigger

Garrity protections. See, e.g., Pinkney v. District of Columbia, 439 F. Supp. 519, 534 (D.D.C.

1977)(Garrity protection is not triggered simply because the right against self-incrimination is

burdened); Chan v. Wodnicki, 123 F.3d 1005, 1009-10 (7th. Cir. 1997)(Garrity is not violated

when a public employer gives a disadvantageous job transfer to an officer who invoked Fifth

Amendment rights). Indeed, Garrity protections are not even triggered when a subject must

make the difficult choice between invoking the Fifth Amendment right and allowing an

unfavorable administrative record to stand, or waiving that right in order to provide explanatory

or ameliorating statements.  See, e.g., Harrison v. Wille, 132 F.3d 679, 682-3 (11th Cir.

1998)(when a law enforcement officer is not compelled to testify and not compelled to waive

Fifth Amendment rights, Garrity is not violated even though the officer's silence in the face of

questioning reflects poorly upon him at an administrative hearing); Hoover v. Knight, 678 F.2d

578, 581 (5th. Cir. 1982)(when a law enforcement officer is not faced with a compelled waiver of

rights or immediate termination, Garrity is not violated even though the officer's silence hinders

her administrative appeal of her termination).  Thus, as the Defendant cannot establish that he

would necessarily have been fired if he failed to compose the requested reports, his reports are

not protected under Garrity.

> 2.    The Defendant's claim that Rivers was pursuing a vendetta against
>       him is unsupported and irrelevant.

The Defendant claims that Rivers sought to extract reports from him for the purpose of

driving him from the USMS.  Motion at 4,7,11.  The Defendant contends that his awareness of

Rivers' agenda led him to believe that he would be terminated if he failed to file his Field and

Use of Force Reports, per Rivers' request.  Id.  As such, the Defendant claims that he

subjectively and objectively believed that he would face adverse employment action if he did not

file the aforementioned reports, and thus the production of those reports violated Garrity.  Motion

at 11.

In support of these claims, the Defendant offers a farrago of undocumented and

unsupported claims to suggest that Rivers did not think highly of his abilities as a DUSM.

<u>Motion</u> at 7.  The Defendant further offers an undated memorandum that purportedly reflects Rivers' antipathy toward him.  <u>Motion Attachment 2</u>.

It is clear that the Defendant's evidence is insufficient to prove any claim.  But even assuming that said evidence was entirely reliable, authenticated, and convincing, it would not prove that the Defendant had an objective reason to believe that his failure to compose a requested statement would result in his termination.  At most, the Defendant's claims suggest that Rivers thought poorly of him.  But it is not objectively reasonable for the Defendant to assume that he would have been fired for failing to complete the requested reports simply because Rivers may have disliked him.  Similarly, the Defendant's anecdotal (at best) evidence to suggest that Rivers disliked him does not prove that Rivers had an "agenda to drive Mr. Cook out of the Marshals Service."  <u>Motion</u> at 11.  Indeed, no evidence indicates that Rivers had the power to remove the Defendant from the USMS even if he wished to do so, nor does any evidence indicate that the Defendant reasonably believed Rivers to possess such power.  Thus, as the Defendant's alleged wariness of Rivers does not constitute an objectively reasonable basis for him to believe that he would be terminated if he failed to complete the reports that Rivers requested, his statements are not protected under <u>Garrity</u>, and thus the Defendant's <u>Motion</u> must fail.

        C.    *The Defendant was not the subject of a criminal or administrative investigation at the time that Rivers asked him to file his reports.*

The Defendant repeatedly asserts that he was the subject of a criminal investigation at the time that Rivers asked him to file reports.  <u>Motion</u>, <u>passim</u>.  In support of this claim, the Defendant argues that "[a] reasonable person would have been aware that an investigation had

13

commenced concerning Hunter's alleged incident, as evinced by SDUSM Rivers' display of the complaint." Id. at 11. The Defendant further argues that "[r]equiring Mr. Cook to make his statement in the reports was SDUSM Rivers' attempt at catching Mr. Cook trying to cover up the incident." Id. at 12.

The Defendant fails to offer any evidence in support of these claims; moreover, it is self-evident that the Defendant's claims rest upon unfounded speculation into the motivations and actions of Rivers. More important, the arguments are factually erroneous. As noted above, USMS Field Reports and Use of Force reports are routine documents whose generation does not indicate the presence of any kind of formal investigation. No evidence indicates that Rivers was engaged in any kind of investigation when he asked the Defendant to submit the reports in question. Rivers was merely enforcing an existing USMS policy that requires DUSMs to compose incident and use of force reports when appropriate.[5]

Finally, the Defendant claims that "the lack of a Garrity warning given to Mr. Cook before his statements were demanded indicates that this was a criminal investigation from the beginning." Motion at 8. Yet the absence of a Garrity warning is entirely consistent with the (correct) belief that Rivers was seeking reports pursuant to the enforcement of routine USMS policy, rather than pursuant to a criminal investigation. The Defendant's argument in this regard proves nothing.

As the Defendant was not under investigation at the time he composed and submitted his reports, his reports are not protected under Garrity, and thus his Motion must fail.

---

[5] Again, as noted above, if the Court requires additional evidence in this regard, the government can present testimony from USMS supervisors in support of this point.

> D.    *Cook submitted and filed the requested reports without asserting his right against self-incrimination, thereby forfeiting any possible* <u>*Garrity*</u> *protections for those reports.*

When a law enforcement officer agrees to answer questions instead of asserting his Fifth Amendment right against self-incrimination, <u>Garrity</u> protections do not apply to the answers to those questions. "<u>Garrity</u> and its progeny bar discharge or discipline of a public employee who steadfastly asserts his Fifth Amendment privilege, but not one who agrees, however reluctantly, to answer questions." <u>Morgan</u>, 2000 U.S. Dist. LEXIS 7446, at *21.

In the instant case, no evidence indicates that the Defendant ever invoked or attempted to invoke his Fifth Amendment right against self-incrimination when Rivers asked him to compose his reports. The Defendant asserts that he "protested" the composition of the Use of Force Report, stating that "because no force was used, there was no reason to write a Use of Force Report." <u>Motion</u> at 2. Even assuming the truth of this claim, the Defendant's "protest" can in no way be construed as an invocation of the right against self-incrimination; at most, he "protested" that the Use of Force Report was needless, rather than self-incriminating. As the Defendant elected to submit the requested reports rather than asserting his Fifth Amendment right, and as no evidence indicates that anything prevented the Defendant from exercising that right, the Defendant lost whatever <u>Garrity</u> protections may have applied to those reports when he submitted them. Thus, the Defendant's <u>Motion</u> must fail.

## III.    CONCLUSION

The First Circuit's analysis in <u>Indorato</u> is particularly apt:

> "Here, defendant did not claim the privilege. He was not told that he would be dismissed if he failed to answer the questions asked. He was not asked to sign a waiver of immunity. There was no statute mandating dismissal for refusal to

15

answer hanging over his head.  Defendant, here, was not, as in <u>Garrity</u>, put 'between the rock and the whirlpool,' [citation omitted]; he was standing safely on the bank of the stream."

<u>United States v. Indorato</u>, 628 F.2d at 717.

Here, as in <u>Indorato</u>, the defendant did not claim the privilege against self-incrimination.  He was not told that he would be dismissed if he failed to answer the questions asked.  He was not asked to sign a waiver of immunity.  No statute or regulation mandated his dismissal for refusing to answer.  Here, as in <u>Indorato</u>, the defendant was not "put between the rock and the whirlpool."  Thus, here as in <u>Indorato</u>, the defendant's statements are admissible as evidence for all charges to which they are pertinent.

Wherefore, the government prays that the court overrule the Defendant's Motion, and allow the Defendant's Field and Use of Force Reports to be admitted into evidence for all applicable charges in the trial of this case.

Respectfully submitted,

_____/s/_____

C. Douglas Kern
Ohio # 0072864
Trial Attorney
United States Department of Justice
Civil Rights Division, Criminal Section
601 D St. NW
Washington, DC 20004
(202) 514-3204


JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

By:    _____/s/_____

John Cummings
Assistant United States Attorney
Member Maryland Bar
555 4th Street, N.W., Room 4838
Washington, DC 20530
(202) 514-7561

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. O7-192 (ESH)** |
| | : | |
| **v.** | : | **JUDGE ELLEN S. HUVELLE** |
| | : | |
| **STEPHEN COOK** | : | **TRIAL OCTOBER 23, 2007** |
| | : | |
| **Defendant.** | : | |

<u>**ORDER**</u>

Having considered Defendant Cook's Defendant Cook's Motion to Suppress His Involuntary Statement Made in His Field and Use of Force Reports, and the government's opposition thereto, it is this _____ day of October,  2007  hereby:

ORDERED that no hearing is required in this matter as the relevant issues have been adequately briefed by the parties, and that the defendant's motion is hereby DENIED.

_____
JUDGE ELLEN S. HUVELLE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Copies sent via ECF to:

John Cummings, Esq.
C. Douglas Kern, Esq.
William B. Moffit, Esq.
Pleasant Brodnax, Esq.

**United States Marshals Service (USMS)**
# USE OF FORCE REPORT



---

| SECTION A |
|---|

| NAME OF USMS PERSONNEL INVOLVED: | TITLE: | SSN: | ASSIGNED DUTY STATION: |
|---|---|---|---|

| ENTRY ON DUTY DATE: | INJURY TO USMS EMPLOYEE:<br>☐ YES (DESCRIBE IN REPORT)  ☐ NO | LOCATION OF INCIDENT (CITY & STATE): |
|---|---|---|

| DISTRICT WHERE INCIDENT OCCURRED: | DATE OF INCIDENT: | TIME OF INCIDENT:<br>_____ ☐ AM<br>☐ PM | DUTY STATUS:<br>☐ ON DUTY<br>☐ OFF DUTY |
|---|---|---|---|

ASSIGNMENT AT TIME OF INCIDENT: (FUGITIVE APPREHENSION, PRISONER TRANSPORT, ETC.)

---

| SECTION B |
|---|

REASON FOR FIREARM DISCHARGE:
☐ PROTECT SELF   ☐ PROTECT OTHER(S)   ☐ OTHER (Explain)   ☐ REMOVED ITEM

| OFFICER'S WEAPON: | MAKE: | MODEL: | SERIAL #: | BARREL LENGTH: |
|---|---|---|---|---|

---

| SECTION C |
|---|

| REASON FOR USE OF FORCE: | ☐ PROTECT SELF   ☐ PROTECT OTHER(S)   ☐ PREVENT ESCAPE   ☐ OTHER (Explain) |
|---|---|

| OFFICER'S WEAPON(S): | ☐ BATON      ☐ OC SPRAY          ☐ PHYSICAL CONTROL   ☐ STUN BELT<br>☐ STUN GUN   ☐ OTHER (Explain) |
|---|---|

IF OC SPRAY WAS UTILIZED, WERE DECONTAMINATION PROCEDURES FOLLOWED?   ☐ YES          ☐ NO (Explain)

---

| SECTION D |
|---|

| ASSAILANT'S NAME: | DOB: | RACE: | GENDER:<br>☐ M  ☐ F | FBI #, AND SID# |
|---|---|---|---|---|

ASSAILANT'S WEAPON: (DESCRIBE IN DETAIL ANY WEAPON USED OR POSSESSED BY THE ASSAILANT AT THE TIME OF THE INCIDENT. ALSO INCLUDE ATTACHED REPORT)

| DID ASSAILANT REQUIRE MEDICAL ATTENTION?<br>☐ YES (DESCRIBE IN REPORT)   ☐ NO | NAME AND TELEPHONE NUMBER OF INVESTIGATIVE AGENCY:<br>(PROVIDE INVESTIGATOR'S NAME  IF AVAILABLE) |
|---|---|

**ATTACH REPORT DESCRIBING INCIDENT IN DETAIL.** THE REPORT SHOULD INCLUDE THE FOLLOWING:
☐ INJURY TO USMS EMPLOYEE   ☐ INJURY TO ASSAILANT   ☐ ASSAILANT'S WEAPON   ☐ LIST OF WITNESSES & CONTACT INFO
☐ WHETHER OTHER OFFICERS DISCHARGED WEAPONS   ☐ EFFECT ARREST

| PREPARED  BY: | TITLE: | DATE: | DISTRICT: |
|---|---|---|---|
| REVIEWED BY: | TITLE: | DATE: | DISTRICT: |

---

Form USM-133
Rev. 08/99

REMARKS:



**Instructions for Use of Force Report**
**USM-133**

## Instructions for Firearm Discharge

1. The SDUSM or CDUSM will complete this report within 18 hours, following a firearm discharge, other than at an authorized <u>firearms</u> range. The employee that discharged the firearm is NOT required to complete this form.

2. Fill out Sections A, B, and D. Attach required supplemental reports to the USM-133.

3. A copy of the employee's current <u>Form USM-333</u> (Firearm Qualification) must be attached to this report.

## Instructions for Use of Force Other Than a Firearm

1. The USMS employee will complete this report, within 24 hours, whenever the employee:

   a. Uses OC spray, Baton, stun belt, stun gun, or physical force greater than minor restraint
   b. Is the victim of a physical assault while performing a lawful duty.

2. Fill out Sections A, C, and D. Attach required supplemental reports to the USM-133.

3. When OC spray or baton are used, a copy of the employee's current OC spray or baton certification must be attached to this report.

4. When a stun belt is activated, <u>Form USM-536</u> must be submitted with this report.

## Report Review Procedure

1. The employee's supervisor will review and sign the report.

2. District management will review the report and forward the original to the Chief of Internal Affairs, Headquarters.

3. The Chief of Internal Affairs will review the report and determine if further action is necessary.