IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CR-192 |
| | ) | |
| STEPHEN COOK, | ) | Hon. Ellen S. Huvelle |
| | ) | |
| Defendant. | ) | |

**DEFENDANT STEPHEN COOK'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *GARRITY* IMMUNITY FOR HIS COMPELLED STATEMENTS**

NOW COMES the Accused Stephen Cook, by and through undersigned counsel, respectfully supplying to this Court, as ordered at the motions hearing on October 15, 2006, his supplemental memorandum of points and authority regarding his Garrity immunity. Mr. Cook states as follows:

Based on the testimony from SDUSM Paul Rivers, the Accused Stephen Cook and Office of Internal Investigations ("OII") Officer Stanley Griscavage, Mr. Cook has demonstrated that his statements, ordered by his supervisor, Paul Rivers, should be suppressed because, by operation of

1

law, the circumstances necessitate that Garrity immunity should be attached.

The Eleventh Circuit has held that "[u]nder Garrity, a public employee is protected so that he does not forfeit his Fifth Amendment right to silence or lose his public employment when requested to give a statement in the course of an internal investigation; such statements may not be used against the employee in a criminal prosecution concerning the matter under investigation." United States v. Veal, 153 F.3d 1233, 1236n.1 (11th Cir. 1998). Consequently, "[t]he Fifth Amendment protection afforded by Garrity to an accused who reasonably believes that he may lose his job if he does not answer investigation questions is Supreme Court-created and self-executing; it arises by operation of law; no authority or statute needs to grant it." Id. at 1239n.4.

Veal involved an appeal of a conviction for obstructing justice in relation to an investigation into a person who died while in police custody. Id. at 1236. The defendants had previously been acquitted on civil rights charges of a violation of 18 U.S.C. § 242, where the district court had suppressed the defendant's statements pursuant to Garrity. Id. Subsequently, the defendants were charged with obstruction of justice violations, and convicted on one count. Id. The defendants had moved to suppress their statements pursuant to Garrity, and the district court had denied this motion, with the Eleventh Circuit upholding this decision. Id.

Out of Veal arises two distinct tests concerning suppression under Garrity. First, the Eleventh Circuit approves of the typical procedure pursuant to Garrity, where a court should look to whether "the Defendant[]... subjectively believed that failure to answer would result in termination, that [he] believed [he] could not invoke the Fifth Amendment without being fired, that these beliefs under the facts of this case were objectively reasonable, and that the actions of

the State were directly implicated in creating this belief.'" Id. at 1239 (quoting United States v. Camacho, 739 F. Supp. 1504, 1520 (S.D. Fla. 1990)). Second, however, the Eleventh Circuit found that false statements are not protected where [g]iving a false statement is an *independent* criminal act that occurs when the individual makes the false statement; it is *separate* from the events to which the statement relates, the matter being investigated." Id. at 1243 (emphasis in original). Therefore, Garrity immunity does not attach to false statements given in an investigation that is separate from the obstruction of justice. However, Veal does not preclude the attachment of Garrity immunity where the underlying investigation involves the obstruction of justice itself.

I. **A CRIMINAL INVESTIGATION INTO BOTH THE ALLEGED CIVIL RIGHTS OFFENSE AND THE OBSTRUCTION OFFENSES WAS INITIATED PRIOR TO MR. COOK BEING COMPELLED TO GIVE HIS STATEMENTS**

Because a criminal investigation into the alleged civil rights offense and obstruction offenses had been initiated prior to Paul Rivers compelling the statements from Mr. Cook, the statements concern a criminal investigation into obstruction of justice, and the Veal rule does not preclude Garrity immunity from attaching. See id. at 1243.

In Veal, on October 16, 1988, a group of police officers received a report that a suspected drug dealer had contracted to kill one of the police officers, and after hearing such information, the officers visited the suspected drug dealer at his home. Id. at 1236. After entering the suspected drug dealer's home, the police officers called for medical help. Id. When medical help arrived, the suspected drug dealer was found lying on a bloody floor with head trauma and a severely bruised chest. Id. The suspected drug dealer died at the scene. Id. In the hours following the incident, on December 17, 1988, the police officers gave statements to *homicide*

*investigators* regarding knowledge of the circumstances surrounding the suspected drug dealer's death. Id. (emphasis added). The officers denied knowing any of the circumstances of the incident. Id. On December 19, 1988, the FBI's Civil Rights Unit opened an investigation into the incident and ultimately charged the officer with violations of 18 U.S.C. §§ 241 and 242. Id. Not until a 1993 federal grand jury investigation were the officers indicted on obstruction of justice charges.[1] Id. Therefore, in Veal, there was no obstruction of justice investigation until approximately 1993, almost five years after the officers statements had been given. The only investigation that had been commenced was a homicide investigation. Furthermore, the obstruction of justice investigation was initiated because of the officer's statements.

    Such facts are substantially different from the testimony taken in this case on October 15, 2007. From the testimony, it is apparent that a criminal investigation into Mr. Cook's alleged civil rights violation and alleged cover-up had commenced when Omar Hunter filed his complaint. OII Officer Stanley Griscavage testified that all citizen complaint forms should be forwarded to OII and that OII had an obligation to forward such forms to the Department of Justice's Civil Rights division. Once these citizen complaint reports are forwarded to the Department of Justice, a criminal investigation is commenced to determine whether to bring charges based on the complaint. Therefore, prior to Rivers compelling statements from Mr. Cook, an investigation into the possible criminal behavior of Mr. Cook had commenced.

    Furthermore, Mr. Griscavage testified that when a supervisor forwards a citizen complaint to OII, sometimes the complaints have attached Field and Use of Force reports, but

---

[1] At the trial, the jury found that there was evidence beyond a reasonable doubt that the officers had attempted to cover up their involvement in the suspected drug dealer's death. An expert testified that all of the officers had blood stains on their pants and shoes that corresponded to them kicking the suspect. Id.

sometimes that is not the case. After the complaint has been forwarded from OII to the Department of Justice, it is the Department of Justice's job to gather the reports and investigate the incident. Furthermore, if a complaint is forwarded to OII and the Department of Justice and the complaint does not have any attached Field or Use of Force Reports, OII and the Department of Justice will investigate why those reports had not been prepared, and the failure to write the reports may lead to administrative sanctions or possible criminal charges. The testimony of Mr. Griscavage was clear that the absence of reports when a complaint is forwarded will initiate an investigation into why the reports were not written.

     Mr. Griscavage also testified that it would be extraordinary for a supervisor to request a use of force report *after* receiving a complaint. Mr. Cook testified that Rivers had ordered him to make the statement despite responding to Rivers that no force had been used. In Mr. Griscavage's experience, it was wrong for River's to request a report subsequent to the alleged incident and the complaint being filed, because it was OII and the Department of Justice's job to investigate the alleged incident and any possible cover-up. Mr. Griscavage testified that part of the reason that only OII and the Department of Justice should investigate is that supervisors do not have the power to give Garrity warning, but rather only the OII and DOJ have such power. Therefore, Omar Hunter's complaint had initiated the criminal investigation into both the alleged incident and any possible cover-up, and Mr. Rivers took it upon himself to begin the investigation of the alleged cover-up by ordering everyone under his command to write reports concerning the incident. Thus, when Rivers ordered that Mr. Cook give a statement in the Field and Use of Force reports, an investigation had already commenced concerning the alleged incident and a possible cover-up of the incident.

Any statement ordered by Rivers after the investigation into the cover-up had already commenced, therefore, is subject to Garrity immunity if the facts of the case demonstrate that it has attached. Mr. Cook's statements concerned the subject of the investigation, the cover-up, and, thus, are different from the statements in Veal, which merely concerned the homicide investigation. Therefore, Veal does not preclude attachment of Garrity immunity.

Mr. Cook suggests that the testimony elicited at the October 15, 2007 hearing demonstrates that Garrity immunity should be attached to his statements.

## II. GARRITY IMMUNITY ATTACHED TO MR. COOK'S STATEMENTS BY OPERATION OF LAW

Mr. Cook argues that even though he was not explicitly granted Garrity immunity for his statements, immunity should attach by operation of law, as demonstrated by the testimony from the October 15, 2007 hearing. Whether Garrity immunity attaches by operation of law is a four part inquiry: 1) whether Mr. Cook subjectively believed that failure to make a statement would result in termination; 2) whether Mr. Cook believed that he could not invoke the Fifth Amendment without being fired; 3) that these beliefs under the facts of this case were objectively reasonable; and 4) that the actions of the State were directly implicated in creating this belief. Id. at 1239 (quoting Camacho, 739 F. Supp. at 1520).

Before demonstrating that the testimony supports that all of these prongs have been met, it is worth noting that the government's reliance on United States v. Indorato, 628 F.2d 711, 715 (1st Cir. 1980) is woefully misplaced. First, while the regulation at issue in Indorato is significantly different from the USMS regulation at issue in this case, see Stephen Cook's Consolidated Reply to Memoranda in Opposition at 11n.6, mere reliance on a regulation does not

constitute the entire test to determine if <u>Garrity</u> immunity attaches. To determine whether <u>Garrity</u> immunity attaches, the Court should look to the totality of the circumstances surrounding the defendant's subjective belief and the reasonableness of such beliefs. Looking to the regulation and sanctions at issue is but one part of the analysis. In <u>Indorato</u>, the defendant only forwarded the regulation, that was very tenuously connected to possible sanction of removal, as the reason as to why he felt compelled to testify. In this case, Mr. Cook has forwarded much more than a mere regulation. Mr. Cook has proffered the regulation and the other overarching circumstances that led him to believe that he was between the 'wall and the whirlpool,' having the Hobson's choice of either making a statement or losing his job.

**A.      Mr. Cook Subjectively Believed that Failure to Make a Statement When Compelled by His Supervisor Would Result in Termination**

In this case, the evidence suggests that Mr. Cook reasonably believed that the failure to make a statement when compelled by his supervisor would result in termination. First, Mr. Cook was aware of the USMS regulations that sanctioned refusal to cooperate with an investigation with the punishment of possible dismissal. Furthermore, Mr. Cook was conscious of the fact that Mr. Rivers had increasingly subjected him to petty punitive actions for violations that Mr. Rivers would not punish other DUSMs. Moreover, Mr. Cook testified that prior to the alleged incident involving Omar Hunter, Mr. Cook had heard a chief threaten to fire another deputy if the deputy did not write a report immediately. Therefore, Mr. Cook subjectively believed that his failure to make a statement by writing the report would have resulted in his termination.

**B.      Mr. Cook Believed that He Could Not Invoke the Fifth Amendment Without Being Fired**

It is apparent from the testimony that Mr. Cook believed that his only option was to either

make a statement or be fired. Mr. Cook was totally unaware that he had an option to invoke the Fifth Amendment to the orders of Supervisor Rivers. Furthermore, Mr. Cook should have been made aware that there was an investigation pending against him by Supervisor Rivers. At such time, Mr. Cook would have had the option to seek out union counsel, who would have presumably told Mr. Cook of his right to plead the Fifth Amendment and get <u>Garrity</u> immunity.

Instead, wholly against the customs and procedures of the USMS, Supervisor Rivers undertook the investigation of Mr. Cook by seeking statements from him. As Mr. Griscavage testified, USMS supervisors should not undertake an investigation themselves because they are unable to give the proper <u>Garrity</u> warning. Mr. Rivers was undertaking out of the ordinary measures when he forced Mr. Cook to write his report. Mr. Rivers even admitted that he was unaware at the time that a deputy had the right to <u>Garrity</u> immunity for any compelled statements.

Therefore, because this investigation and compelling of statements of Mr. Cook by Mr. Rivers was out of the ordinary procedure for investigations, Mr. Cook was not afforded any rights afforded those persons who are the subject of investigations. As such, Mr. Cook believed that his only option was to either make a statement or be fired. Mr. Cook, subjectively did not believe that he even had the right to invoke the Fifth Amendment privilege concerning an order from his supervisor.

**C.    Mr. Cook's Beliefs Were Objectively Reasonable Under the Facts of this Case**

Mr. Cook's beliefs that he would be fired if he did not make a statement by writing the reports and that he could not invoke his Fifth Amendment without being fired were objectively reasonable under the facts of this case. As stated above, the USMS guidelines explicitly list failure to cooperate with an investigation as possibly resulting in a sanction of removal from

employment. Furthermore, a reasonable person would believe that a supervisor, who in the past had been notoriously malicious toward the person, would use such a sanction against him or her to its full extent- to get that person fired. Moreover, a reasonable person who had heard such threats made before, would believe that he or she could be fired in these circumstances. Finally, it would be objectively reasonable for Mr. Cook to believe that he did not have a Fifth Amendment privilege when a statement was compelled by his immediate supervisor, and not administrative or criminal investigators.

D.     **The Actions of the State Were Directly Implicated in Creating this Reasonable Belief**

Finally, the actions of the State, namely the actions of Supervisor Paul Rivers, were directly implicated in creating Mr. Cook's reasonable beliefs. As stated above, it was Mr. Rivers petty actions toward Mr. Cook that made Mr. Cook believe that a refusal to cooperate with Mr. River's investigation would result in the harsh sanction of punishment. Furthermore, it was Mr. Rivers who undertook the investigation into Mr. Cook on his own, violating the customs of the USMS, and creating the impression in Mr. Cook that he did not have the right to plead the Fifth Amendment.

Therefore, Mr. Cook has demonstrated that Garrity immunity should attach to the statements compelled by his supervisor over Mr. Cook's objections.

III.    **EVEN IF THE COURT FINDS THAT MR. COOK'S STATEMENTS SHOULD NOT BE SUPPRESSED TO THE OBSTRUCTION OF JUSTICE AND FALSE STATEMENT COUNTS, MR. COOK'S STATEMENTS SHOULD BE SUPPRESSED AS TO THE 18 U.S.C. § 242 COUNT**

Even if the Court decides that Veal prohibits the suppression of statements to the obstruction of justice and the false statement counts, the Eleventh Circuit makes clear that it is

wholly appropriate to suppress the statements as to the 18 U.S.C. § 242 count itself. Veal, 153 F.3d at 1236. During the initial civil rights trial, the District Court had correctly suppressed the officers' statements as they related to the 18 U.S.C. §§ 241 and 242 offenses. Nothing in Veal would allow for such statements to be used in the underlying civil rights violation. Thus, even if the Court finds that Garrity does not apply to the obstruction counts, the Court should find that Mr. Cook's statements should be suppressed as to the substantive civil rights violation.

Respectfully Submitted,

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
11582 Greenwich Point Road
Reston, VA 20194
Phone: (703) 834-0204
Fax: (703) 834-0206
Email: wbmoffitt_esq@yahoo.com

**/s/ Pleasant Brodnax**
Pleasant Brodnax
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
(202) 462-1100
Email: valawyer@erols.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that the **Stephen Cook's Supplemental Memorandum of Points and Authorities Regarding His Garrity Immunity** was served upon the following individual on October 16, 2007 by electronic means through the ECF system:

John M. Cummings
U.S. Attorney's Office
555 Fourth Street, NW

Washington, DC 20530
(202) 305-1637

        Respectfully Submitted,

        **/s/ William B. Moffitt**
        WILLIAM B. MOFFITT
        Moffitt & Brodnax, Ltd.
        11582 Greenwich Point Road
        Reston, VA 20194
        Phone: (703) 834-0204
        Fax: (703) 834-0206
        Email: wbmoffitt_esq@yahoo.com

        **/s/ Pleasant Brodnax**
        Pleasant Brodnax
        The Mills Building, Suite 400
        1700 Pennsylvania Avenue, NW
        Washington, DC 20006-4707
        (202) 462-1100
        Email: valawyer@erols.com