IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:07-CR-192 |
| | ) | |
| STEPHEN COOK, | ) | Hon. Ellen S. Huvelle |
| | ) | |
| Defendant. | ) | |

**DEFENDANT STEPHEN COOK'S MOTION FOR A MISTRIAL BASED UPON THE GOVERNMENT'S FAILURE TO PROVIDE EXCULPATORY *BRADY* EVIDENCE**

NOW COMES, Defendant Stephen Cook, by and through his undersigned counsel, respectfully moving this Court for an order declaring a mistrial based upon the government's failure to provide the Defendant with exculpatory Brady evidence.  In support of this motion, Mr. Cook states as follows:

Central to this case and all of the charges against Mr. Cook is one issue- what happened on August 30, 2005 at the Superior Court for the District of Columbia's loading dock between Mr. Cook and Omar Hunter.  Such an issue is obviously central to the 18 U.S.C. § 242 count, but is also essential to the false statement, conspiracy, and witness tampering counts because the government must prove materiality- that what Mr. Cook reported as occurring, assisting a defiant prisoner out of the Metropolitan Police Department van, did not actually happen as stated by Mr. Cook.

Furthermore, throughout the pretrial process, the defense has been dogged about demanding Brady, Giglio, and Jencks material from the government.  The defense has sent multiple letters and numerous follow-up communications pursuing such exculpatory and impeachment evidence.

1

Despite the undisputed importance of this issue to the case and the defense's persistent requests for exculpatory and impeachment evidence, the defense was not alerted to the existence of exculpatory <u>Brady</u> evidence until after opening arguments, during the direct examination of James McNeill.  Only through the testimony of Mr. McNeill did the defense learn that Mr. Hunter was involved in a virtually identical incident at the D.C. central cell block, a mere minutes before the incident involving Mr. Cook.  During this incident at the central cell block, Mr. Hunter had refused to give the officers his name and had refused to comply with the officers in leaving his cell.  As a result, the officer had to forcibly remove Mr. Hunter from his cell.  This is the same exact thing that Mr. Cook contends occurred between him and Mr. Hunter at Superior Court's loading dock, and is undisputable exculpatory, material evidence.

## I.    THE GOVERNMENT'S SUPPRESSION OF EXCULPATORY EVIDENCE REGARDING OMAR HUNTER'S INCIDENT AT THE Central cell block DENIES MR. COOK HIS RIGHT TO A FAIR TRIAL

In <u>Kyles v. Whitley</u>, the Supreme Court reaffirmed the holding of <u>Brady v. Maryland</u>, "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  514 U.S. 419, 432 (1995) (quoting <u>Brady v. Maryland</u>, 373 U.S. 83, 83 (1963)).  The Court found that there are three circumstances in which a <u>Brady</u> claim may arise: 1) where undisclosed evidence demonstrated that trial testimony was perjured; 2) where the government failed to respond to a specific request of disclosure by the defense; and 3) where the government failed to provide exculpatory evidence that was never requested.  <u>Id</u>. at 433.  Even in the last situation, "[t]he Court found a duty on the part of the Government,... though only when suppression of the evidence would be 'of sufficient

2

significance to the result in the denial of the defendant's right to a fair trial.'" Id. (quoting

United States v. Agurs, 427 U.S. 97, 108 (1976)).  Furthermore, the Court affirmed  that there is

no "difference between exculpatory and impeachment evidence for Brady purposes," and "that

regardless of request, favorable evidence is material, and constitutional error results from its

suppression by the government, 'if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting

United States v. Bagley, 473 U.S. 667, 682 (1985)).

The District Court for the District of Columbia has adopted the Supreme Court's test

regarding Brady material, delineating three prongs: 1) whether "the evidence at issue [is]

favorable to the accused, either because it is exculpatory, or because it is impeaching; 2) whether

the "evidence [had] been suppressed by the State, either willfully or inadvertently;" and 3)

whether "prejudice must have ensued."  In re Sealed Case No. 99-3096 (Brady Obligations), 185

F.3d 887, 892 (D.C. Cir. 1999).

**A.      The Evidence at Issue, Omar Hunter's Previous Incident at the Central cell block, is
         Favorable to Mr. Cook Because it is Exculpatory and Impeaching**

Clearly, the incident involving Omar Hunter at the jail prior to being transported to the

Superior Court is both exculpatory and impeaching.  Such information is exculpatory because

Omar Hunter provoked the very same response from officers in the central cell block that he

provoked from Mr. Cook.  Namely by refusing to supply his name and to obey orders to exit his

cell, the officers at the central cell block were compelled to forcibly pull or escort Omar Hunter

from his cell.  This description of behavior that occurred mere minutes before the incident

involving Mr. Cook and Mr. Hunter tends to validate Mr. Cook's version of the events- that he

had to escort a non-compliant prisoner out of the van.  Moreover, this information is also

impeachment evidence, that can be used to impeach the testimony of the victim, Omar Hunter,

and to impeach Mr. McNeill.

While the information about Omar Hunter's incident at the central cell block is

exculpatory in and of itself, the Court should also recognize that the information could likely lead

to more exculpatory evidence.  For instance, if the defense had been informed about the incident

at the central cell block during the pretrial proceedings, an investigation would have been

conducted into what exactly happened during the incident.  Such information could have led to

admissible, exculpatory evidence regarding the possibility that Mr. Hunter was physically injured

while at the central cell block, rather than at the Superior Court.  Also, the investigation spurned

from this withheld information could have led the defense to find a cover-up that occurred at the

central cell block, rather than at the Superior Court.  Such an investigation may have turned up

reasons why Mr. McNeill would make inculpatory statements against Mr. Cook.  However, the

result of this investigation and the possibility of the finding of more exculpatory and

impeachment evidence remains hypothetical because the government did not reveal this Brady

evidence to the defense in a timely manner.

**B.      The Evidence Regarding Omar Hunter's Previous Incident at the Central cell block
         Had Been Suppressed by the Government**

Furthermore, it is clear that this evidence had been suppressed by the government.  At

trial, the government represented to this Court that it had become aware of this information while

preparing for trial.  Thus, the government had this information at the pre-trial stage, and the

defense was not informed of this information until it was elicited from Mr. McNeill during direct

examination.  This clearly shows that the government had either inadvertently or intentionally

suppressed such favorable evidence.

However, even if the government contends, contradicting its statement in open court, that

it was not aware of the information until the day that Mr. McNeill took the stand, the government

cannot escape its Brady duty by remaining willfully ignorant to exculpatory evidence.  The D.C.

Circuit has adopted the holding in Kyles "that the [Brady] rule includes evidence 'known only to

police investigators and not to the prosecutor.'  Hence, to comply with Brady, 'the individual

prosecutor has a duty to learn of any favorable evidence known to others acting on the

government's behalf in the case, including the police.'"  In re Sealed Case No. 99-3096 (Brady

Obligations), 185 F.3d at 892 (citing Kyles, 514 U.S. at 438 (1995)).  The D.C. Circuit has

further stated that because "the test is an objective one, not dependent in any way on

prosecutorial bad faith,... the rule is framed in a way that permits its application to facts of which

the prosecutors are ignorant."  United States v. Brooks, 966 F.2d 1500 (D.C. Cir. 1992).  Thus,

Brady requirements are extended to searches for evidence, especially in cases where there is a

"close working relationship between the Washington metropolitan police and the U.S. Attorney

for the District of Columbia (who prosecutes both federal and District crimes, in both federal and

Superior courts), a relationship obviously at work in this prosecution...."[1]  Id. at 1503.

The government had an affirmative duty to reasonably investigate whether Mr. Hunter

was involved in any prior incident before the incident involving Mr. Cook.  The government had

---

[1] The D.C. Circuit explains that the rationale underlying such a rule has to do with "incentives for
government... that without the extension [to a duty to investigate] we would be inviting and placing a premium on
conduct unworthy of representatives of the United States Government."  Id. at 1502 (citing United States v. Auten,
632 F.2d 478, 481 (5th Cir. 1980)).  The affirmative duty to investigate "stem[s] primarily from a sense that an
inaccurate conviction based on government failure to turn over an easily turned rock is essentially as offensive as one
based on government non-disclosure."  Id. at 1503.

Mr. McNeill on the witness stand before the grand jury, yet the government failed to follow up with any questions regarding Mr. McNeill's own incident with Mr. Hunter at the central cell block.  In fact, during the grand jury testimony of Mr. McNeill, there is one answer that alludes to a possible altercation.  Mr. McNeill answered that "[b]asically, that particular day, when – I know that there was other guys that was pulling him out of the cell, he wouldn't answer up." (McNeill Grand Jury Tr. 11).  Any reasonable follow-up questions by the government to this answer would have revealed that Mr. Hunter and Mr. McNeill were involved in an incident at the jail.  Yet the government chose to be willfully ignorant of such incident, sticking its head in the sand and pretending not to hear such unfavorable evidence.

Therefore, Mr. Cook suggests that the government suppressed the information when it became aware of this information during pre-trial preparation and did not provide the information to the defense.  Alternatively, the government had a duty to investigate and discover this exculpatory evidence, which it failed to reasonably undertake.  Thus, either argument demonstrates necessary suppression on the part of the government.

## C.    Prejudice Has Ensued From the Suppression of the Exculpatory and Impeachment Evidence

For prejudice to be found, the evidence must be "material" or have a "reasonable probability" of producing a different result in the proceeding.  Id.  "If the undisclosed evidence is material, a new trial is required."  Id. (citing Kyles, 514 U.S. at 421-22).  Mr. Cook suggests to this Court that the undisclosed incident involving Omar Hunter at the central cell block was material to this proceeding, and that its disclosure at the proper time would have the reasonable probability of producing a different result.

The <u>Kyles</u> Court further detailed four relevant aspects of materiality.  <u>Id</u>. at 434.  First, the "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal," but rather "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  <u>Id</u>.  Second, the proper test is not a "sufficiency of evidence test," but only requires a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Id</u>. at 434-35.  Third, once a court "has found constitutional error there is no need for further harmless-error review.... [A] <u>Bagley</u> error could not be treated as harmless, since a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  <u>Id</u>. at 435.

Fourth, the cumulative effect is what must be examined.  <u>Id</u>. at 437.

While the definition of <u>Bagley</u> materiality in terms of the cumulative effect of suppression must accordingly be seen as leaving the government with a degree of discretion, it must also be understood as imposing a corresponding burden.  On the one side, showing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a <u>Brady</u> violation, without more.  But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.  *This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including police.*

<u>Id</u>. at 437 (emphasis added).

Furthermore, important to this case, just because the favorable evidence is eventually disclosed to the defense does not foreclose a finding of materiality as to the suppression.

"Disclosure by government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure." United States v. Pollack, 534 F.2d 964, 973 (D.C. Cir. 1976) (citing United States v. Elmore, 423 F.2d 775, 779 (4th Cir. 1970) and United States v. Deutsch, 373 F. Supp. 289, 290-91 (S.D.N.Y. 1974)). See also United States v. Dean, 55 F.3d 640, 663 (D.C. Cir. 1995) ("If a defendant receives exculpatory evidence 'in time to make effective use of it,' a new trial is, in most cases, not warranted."); United States v. Coppa, 267 F.3d 132 (2d Cir. 2001) ("As long as defendant possesses Brady evidence in time for its effective use, government has not deprived defendant of due process of law simply because it did not produce the evidence sooner; there is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial.").

Thus, under the effective use rule, sometimes the government's disclosure may be "too little, too late." Leka v. Portuondo, 257 F.3d 89, 99 (2d Cir. 2001). In Leka, the Second Circuit found that "[t]here is no doubt that the prosecutor had that information from the beginning of the case.... And it is clear that the information was favorable to the defense. So there is really no question but that the government suppressed information that it was required to turn over." Id. The determinative issue came down to whether "disclosure on the eve of trial... was sufficient to permit the defense to learn all that it needed to know." Id. The court found that "the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use." Id. Furthermore,

> [a]lthough it well may be that marginal Brady material need not always be disclosed upon request prior to trial, the fact that [a witness identified a man other than the accused as committing the crime] was without question specific, concrete evidence of a nature

requiring pretrial disclosure to allow for full exploration and exploitation by the defense. This information, so withheld by the Government, would have had a material bearing on defense preparation, and therefore should have been revealed well before the commencement of the trial."

Id. "The limited Brady material disclosed to Leka could have led to specific exculpatory information only if the defense undertook further investigation. When such a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired. The defense may be unable to divert resources from other initiatives and obligations that are or may seem more pressing. And the defense may be unable to assimilate the information into its case." Id. (citing United States v. Cobb, 271 F. Supp. 159, 163 (S.D.N.Y. 1967) ("[T]here may be instances where disclosure of exculpatory evidence for the first time during trial would be too late to enable the defendant to use it effectively in his own defense, particularly if it were to open the door to witnesses or documents requiring time to be marshalled and presented.")). The Second Circuit found that:

> new witnesses or developments tend to throw existing strategies and preparation into disarray. For example, Leka undertook to show on defense that whether conditions might have impaired visibility- a tack he may not have wanted to take if he was going to rely on what Garcia saw from his second-floor window across the street.... [T]his testimony illustrates how difficult it can be to assimilate new information, however favorable, when a trial already has been prepared on the basis of the best opportunities and choices then available.

Id.

Here the government's disclosure of this information through the direct examination of a witness, after opening arguments had been completed, was too little, too late, as it deprived the defense of effective use of such information. Had the government properly disclosed the information as soon as they discovered it, the defense would have been able to effectively use

9

such information, both in making its opening argument to the jury and in conducting further investigation that may uncover further admissible, exculpatory evidence.

First, the defense would have been able to use such evidence effectively in the opening argument. A main theme of the opening argument was that Mr. Hunter was a defiant prisoner that necessitated the use of forcible removal from the prison van because of his contumaciousness. The defense surely would have been able to very effectively use the information that Mr. Hunter had been involved in an identical incident at the central cell block a mere minutes before the incident with Mr. Cook.

Second, and most importantly, though, the defense needed adequate opportunity to investigate such an incident and to integrate the investigation of the incident into the theory of the case. An investigation into the incident raises a range of probable discovery of further exculpatory evidence. Such an investigation may lead to admissible evidence showing that Mr. Hunter was injured during the central cell block incident or that the MPD officers had covered up such an incident. Moreover, investigation is needed to develop sufficient admissible evidence regarding the incident at the central cell block, including any possible police reports that exist, or any other witnesses to the incident. At this time, after opening arguments and all investigation and discovery has been concluded, it is much too late for the defense to use this information effectively. While the defense may still be able to use this information as cross-examination fodder, it is unable to use this information to develop admissible exculpatory evidence to affirmatively proffer to the jury.

Therefore, because the timing of the disclosure of the evidence prevents the defense from effectively using such information, the suppression of the favorable evidence is material. There

10

is a reasonable probability that the use and development of such information would lead to a

different outcome.  Thus, the defense has been sufficiently prejudiced by the suppression.  Such

prejudice to the defense necessitates that the Court declare a mistrial so that Mr. Cook is not

denied his right to a fair trial.

## CONCLUSION

WHEREFORE, Defendant Stephen Cook respectfully requests that this Court declare a

mistrial based upon the government's failure to disclose exculpatory Brady material.

Respectfully Submitted,

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
11582 Greenwich Point Road
Reston, VA 20194
Phone: (703) 834-0204
Fax: (703) 834-0206
Email: wbmoffitt_esq@yahoo.com

**/s/ Pleasant Brodnax**
PLEASANT BRODNAX
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
(202) 462l-1100
Email: valawyer@erols.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that **Defendant's Motion for a Mistrial Based Upon Failure to Provide Exculpatory <u>Brady</u> Evidence** was served upon the following individual on October 23, 2007 by hand delivery.

John M. Cummings
U.S. Attorney's Office
555 Fourth Street, NW
Washington, DC 20530
(202) 305-1637

Respectfully Submitted,

**/s/ William B. Moffitt**
WILLIAM B. MOFFITT
Moffitt & Brodnax, Ltd.
11582 Greenwich Point Road
Reston, VA 20194
Phone: (703) 834-0204
Fax: (703) 834-0206
Email: wbmoffitt_esq@yahoo.com

**/s/ Pleasant Brodnax**
PLEASANT BRODNAX
The Mills Building, Suite 400
1700 Pennsylvania Avenue, NW
Washington, DC 20006-4707
(202) 462l-1100
Email: valawyer@erols.com

12