UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
DEC 10 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | Criminal No. 07-192 (ESH) |
| ) | |
| STEPHEN COOK, ) | |
| ) | |
| Defendant.  ) | |

## MEMORANDUM OPINION AND ORDER

On October 30, 2007, a jury convicted Stephen Cook, a Deputy United States Marshal, of (1) Deprivation of Civil Rights Under Color of Law Causing Bodily Injury in violation of 18 U.S.C. § 242; (2) Concealment or Falsification of a Material Fact in violation of 18 U.S.C. § 1001(a); and (3) two counts of Witness Tampering in violation of 18 U.S.C. § 1512(b)(1). The convictions were based on defendant's use of force against Omar Hunter, a detainee who had been transported to the "sally port" area of the District of Columbia Superior Court on August 30, 2005, and defendant's subsequent attempts to cover up the incident. Pending before the Court are defendant's post trial motion seeking acquittal or a new trial pursuant to Federal Rules of Criminal Procedure 29 and 30 and his motion for release from detention pending sentencing. Defendant argues that the government failed to disclose exculpatory information prior to trial, and that the Court improperly precluded defense counsel from arguing in closing about the insufficiency of the government's evidence. For the reasons discussed herein, defendant's motions will be denied.

I. **Rule 33 Motion**

Under Rule 33, a court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The granting or denial of a motion for a new trial is committed to the sound discretion of the trial court judge and is reviewed only for abuse of discretion. *United States v. Kelly*, 790 F.2d 130, 133 (D.C. Cir. 1986). In general, a court should grant a Rule 33 motion only if "a serious miscarriage of justice may have occurred." *United States v. Johnson*, Crim. Action No. 03-488, 2007 WL 666566, at *6 (D.D.C. Feb. 28, 2007) (quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990)).

A. **Alleged *Brady* Violations**

Defendant argues that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose pretrial evidence relating to three topics: (1) information concerning the victim Omar Hunter's "attitude and behavior," which the defense argues demonstrates that Hunter believed himself to be "above the law" (Def.'s Post Trial Mot. at 5; Def.'s Reply at 1); (2) eyewitness Bernard Thornton's commitment to a mental health facility for competency evaluations two months after the incident in the sally port (Def.'s Post Trial Mot. at 6-8); and (3) an alleged incident at the Metropolitan Police Department central cell block ("CCB") immediately before the sally port incident, in which Omar Hunter refused to "answer up" to his name and may have resisted coming out of his cell to be loaded onto a van for transport to Superior Court. (*Id.* at 8-9).

Under *Brady*, the government has an affirmative duty to disclose material evidence favorable to a criminal defendant. *Brady*, 373 U.S. at 87. The three components of a *Brady* violation are that "[t]he evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A defendant asserting a *Brady* violation as grounds for a new trial under Rule 33 "must establish the materiality of the evidence to show that its suppression was prejudicial." *Johnson*, 2007 WL 666566, at *7. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Where potential *Brady* material comes to light during the course of a trial, the defendant must establish a reasonable probability that the jury would have acquitted had the evidence been disclosed earlier. *United States v. Tarantino*, 846 F.2d 1384, 1417 (D.C. Cir. 1988). Thus, defendant must demonstrate that the failure to disclose allegedly exculpatory or impeachment evidence resulted in "a verdict [not] worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

First, defendant argues that the government withheld information "concerning the attitude and behavior of" Omar Hunter. (Def.'s Post Trial Mot. at 5.) Specifically, defendant argues that the government knew and should have disclosed that Hunter believed himself to be "above the law," as illustrated by his use of a copyright symbol as part of his signature and his use of a self-made "Freeman's Writ to Travel" in lieu of a state-issued driver's license. (Def.'s Reply at 1.) Defense counsel, however, knew about Hunter's beliefs prior to trial and he questioned Hunter extensively at trial about his use of the copyright symbol and the Freeman's Writ to Travel. To the extent that these practices impugned Hunter's credibility because they reflect a disrespect for

law enforcement, defense counsel thoroughly cross-examined Hunter about his personal beliefs, and the jury had the opportunity to consider those beliefs in evaluating his testimony. Moreover, such evidence would not have been exculpatory. While it might arguably have been relevant to a defense that Hunter was a difficult or noncompliant detainee and that the defendant's use of force was therefore warranted, that was not the theory of the defense here. Defendant consistently maintained that he *did not* use any force against Hunter, not that his use of force was reasonable under the circumstances.

Second, defendant argues that the government violated *Brady* by failing to disclose that one of its eyewitnesses, Bernard Thornton, an inmate who had been on the police van with Hunter at the time of the incident, had been committed to a mental health facility for competency evaluations two months after the incident. (Def.'s Post Trial Mot. at 6.) At trial, the Court reviewed Thornton's mental competency records and decided that they did not need to be produced to defendant because the competency evaluations took place months after the incident in the sally port occurred, and Thornton was ultimately found to be competent. Therefore, the Court concluded that the records did not constitute *Brady* information. In addition, the Court gave defendant the opportunity to call Thornton back to the witness stand to question him about whether his perception might have been impaired on the day of the incident due to drug usage or any other impediment, but defense counsel elected not to do so.[1] Furthermore, Thornton's

---

[1] In his reply brief, defendant correctly states that the government objected to Thornton being brought back to trial for this line of questioning because defense counsel had already had the opportunity to question him about drug use, which is a standard line of questioning for any witness. Defendant claims that he did not recall Thornton because the Court sustained the government's objection. This is not borne out by the record. Rather, the Court overruled the government's objection, stating that it was up to defense counsel whether to recall Thornton and telling defense counsel to let the Court know if they wanted to bring him back.

testimony about the sally port incident was corroborated by the numerous other eyewitnesses who testified about what they observed in the sally port that day.

Lastly, Metropolitan Police Officer James McNeill testified at trial that Hunter may have refused to "answer up" to his name at the CCB when he was being moved from his cell onto the van for transport to Superior Court. Defendant, without any evidentiary support, attempts to characterize whatever occurred at the CCB as a "use of force incident," and based on this mischaracterization, he claims had he learned about this alleged incident earlier, he would have been able to present more evidence to convince the jury that Hunter's injuries were not sustained in the sally port of the Superior Court at the hands of the defendant, but rather that Hunter was injured at the CCB prior to his arrival at the sally port. (Def.'s Post Trial Mot. at 10.) There is not, however, a shred of evidence in the record to support such a theory. At trial, five witnesses corroborated Hunter's assertion that he was assaulted in the sally port area of the Superior Court as he was being removed from the police transport van.[2] No one even suggested that force was used at the CCB. Officer McNeill testified about civilian technician employees at the CCB who had responsibility to "pull" Hunter and other detainees out of their cells to load them onto the transport van, but he explained that the term "pulling" detainees did not imply any use of physical force. The defense called Hunter to the stand a second time to cross-examine him about what had occurred at the CCB, and Hunter confirmed that he had been assaulted in the sally port of Superior Court, not at the CCB. Moreover, several witnesses confirmed that Hunter had no

---

[2]The other eyewitnesses were Bernard Thornton, Bryan Behringer, Michael Sharpstene, Del Ramsey, and James McNeill. Indeed, defendant's own statements to his supervisor, Paul Rivers, after Rivers received Hunter's complaint on the day following the sally port incident indicate that, at that time, defendant acknowledged that *something* out of the ordinary happened in the sally port on August 30, 2005, and that he was involved.

visible injuries when he arrived at the Superior Court sally port.  Given this convincing and uncontroverted evidence, no reasonable juror could have believed that the assault against Hunter occurred at the CCB.[3]

Defendant also argues that "[e]vidence that Mr. Hunter was non[]compliant with MPD officers in the same matter that he was noncompliant with the defendant, and that Mr. Hunter had to be forcibly removed from his cell and placed on the van while still in the custody of the MPD mere moments before he was taken into [Marshals Service] custody is clearly exculpatory." (Def.'s Post Trial Mot. at 10.)  But such evidence of previous non-compliance with law enforcement, even assuming it existed, would not be material or exculpatory for the same reasons that any evidence about Hunter's "attitude" is immaterial.  Defendant consistently denied using any force against Hunter, and therefore, evidence suggesting that Hunter may have been a noncompliant detainee could not have helped his case.

For these reasons, considering the totality of all this evidence and even assuming *arguendo* that it was suppressed by the government, defendant has failed to demonstrate any "reasonable probability" that had the evidence been disclosed earlier, "the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682.  Accordingly, there can be no finding of a *Brady* violation.

---

[3]In addition, when it was revealed at trial that personnel at the CCB may have had trouble persuading Hunter to leave his cell, the government, at the Court's direction, provided defense counsel with the names of the two Metropolitan Police Department civilian technicians responsible for removing Hunter from his cell at the CCB, and according to representations by the government, the defense interviewed these individuals but apparently chose not to call them as defense witnesses.

### B. Defense Counsel's Closing Argument

Defendant also argues that the Court improperly precluded defense counsel from making several arguments during his closing statement. (Def.'s Post Trial Mot. at 12-13.) The Court sustained three objections made by the government during defense counsel's closing statement. Defendant argues that his counsel was thereby prevented from "point[ing] out to the jury evidence that the government did not present to highlight that the government did not satisfy its burden of proof." (*Id.* at 14.) Specifically, defendant contends that his counsel sought to argue that the government failed to meet its burden of proof because it did not introduce witnesses to testify about the alleged "use of force incident" at the CCB, and because it did not produce the "van sheet" listing the names of the other detainees on the police transport van with Hunter. (Def.'s Post Trial Mot. at 15; Def.'s Reply at 6.) Defendant bases his argument on *United States v. Lawson*, 494 F.3d 1046, 1053 (D.C. Cir. 2007), in which the D.C. Circuit held that it was permissible in closing arguments for defense counsel to comment on the absence of a witness or other types of evidence because "point[ing] out to the jury the kinds of evidence that they might have expected to see but did not" simply "call[s] into question the sufficiency of the government's evidence," and such an argument is "typical and expected." *Id.*

A "trial court has 'broad discretion in controlling the scope of closing argument,' and an abuse of that discretion will be found only where the effect of the trial court's ruling is to 'prevent[] defense counsel from making a point essential to the defense.'" *United States v. Hoffman*, 964 F.2d 21, 24 (D.C. Cir. 1992) (quoting *United States v. Sawyer*, 443 F.2d 712, 713 (D.C. Cir. 1971)). Even where a court has made an erroneous ruling, "a new trial should be granted only if the moving party has shown that the error was substantial, not harmless, and that

the error 'affected the defendant's substantial rights.'" *United States v. Walker*, 899 F. Supp. 14, 15 (D.D.C. 1995) (quoting *United States v. Johnson*, 769 F. Supp. 389, 395-96 (D.D.C. 1991)). An error affecting "substantial rights" is one that has a "substantial and injurious effect or influence in determining the . . . verdict." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (quoting *Kotteakos v. United States*, 328 U.S. 750, 766 (1946)).

For the reasons discussed herein, no reasonable juror could have believed that Hunter sustained his injuries from a prior assault at the CCB rather than at the sally port of Superior Court. It would not have been proper for defense counsel to suggest to the jury that the government improperly failed to present evidence about a prior "use of force incident" at the CCB when there is absolutely nothing in the record to suggest that such an incident occurred or that such evidence existed, and the Court therefore correctly sustained the government's objection to this argument. Nevertheless, defense counsel *did* make essentially this very argument several times during his closing statement, suggesting to the jury that Hunter had actually been assaulted at the CCB prior to arriving at Superior Court, so defendant cannot claim prejudice from the Court's ruling.

With respect to the van sheet, defendant states that he "should have been allowed to argue that the government did not meet its burden of proof because the van sheet . . . was never introduced by the government" (Def.'s Reply at 7), but defendant has not established that this sheet, even assuming it existed, was in any way essential or even relevant to the government's burden of proof. The names and exact number of passengers on the police van with Hunter and Thornton are immaterial in light of the substantial evidence presented to the jury about the

incident in the sally port.[4]

For these reasons, the Court's rulings during defendant's closing argument were not an abuse of discretion because they did not "prevent[] defense counsel from making [any] point essential to the defense." *Sawyer*, 443 F.2d at 713. Moreover, given the overwhelming evidence presented by the government about the sally port incident, any arguable error in the Court's rulings during defendant's closing argument did not have a "substantial and injurious effect or influence in determining the . . . verdict." *Lawson*, 494 F.3d at 1053-54 (quoting *Dominguez Benitez*, 542 U.S. at 81) (internal quotation marks omitted) (upholding jury verdict despite finding that the district court erred by preventing defense counsel from making a sufficiency of the evidence argument in closing statement because the Court found it "highly unlikely that the jury would have struggled over" the conviction even if the argument had been presented).

Accordingly, plaintiff's Rule 33 motion for a new trial must be denied.

## II.   Rule 29 Motion

In addition to his Rule 33 motion, defendant also renews his motions for acquittal under Rule 29 that he made at the end of the government's evidence and at the end of trial, though he has not presented any new argument with respect to these motions. (Def.'s Post Trial Mot. at 1 n. 1.) In reviewing a post-verdict motion for judgment of acquittal under Rule 29, a court "must

---

[4]In his post trial motion, defendant initially stated that "[d]efense counsel also sought to argue that the government did not call other prisoners on the van." (Def.'s Post Trial Mot. at 15.) In its opposition, the government cited portions of the trial transcript to establish that defendant did not actually attempt to make this argument at trial, but rather that defendant's argument related only to the total number of detainees on the van with Hunter. (Gov't Opp'n at 14-15.) In his reply, defendant appears not to contest the government's characterization of his closing arguments and does not argue that he was precluded from pointing out that the government did not call the other detainees who were on the van that day. (*See* Def.'s Reply at 6-7.)

view the evidence in the light most favorable to the verdict." *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983). Such a motion for judgment of acquittal should be denied when the evidence is "sufficient to permit a rational trier of fact to find all the essential elements of the crime beyond a reasonable doubt." *United States v. Morrow*, Crim. Action No. 04-355, 2005 WL 1389256, at *3 (D.D.C. June 13, 2005) (quoting *United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001)). Typically, the jury's determination will stand unless no reasonable juror could have found a defendant guilty beyond a reasonable doubt. *Johnson*, 2007 WL 666566, at *2.

Here, the government presented numerous eyewitnesses to the use of force against Hunter in the sally port, and there was ample evidence, including testimony, documents, and tape recordings, to support the false statements and witness tampering counts. Accordingly, the Court reaffirms its prior ruling that the government presented sufficient evidence at trial to permit a reasonable juror to find all of the essential elements of each count beyond a reasonable doubt, and plaintiff's renewed Rule 29 motion must therefore be denied.

### III.   Motion for Release Pending Sentencing

Finally, defendant moves for release from custody pending his sentencing. At the time of defendant's conviction, the Court detained him pending sentencing at the government's request pursuant to 18 U.S.C. § 3143(a)(2) because he was convicted of a crime of violence and the Court found that there was not a substantial likelihood that a motion for acquittal or a new trial would be granted. *See* 18 U.S.C. § 3143(a)(2); *id.* § 3142(f)(1)(A). Defendant now argues that the Court should reconsider its detention order because he does not pose a danger to the safety of others, he is not likely to flee, and there is a substantial likelihood that his post trial motions for acquittal or new trial will be granted. (Def.'s Mot. for Release at 1.) In the alternative, defendant

argues that he should be released pursuant to 18 U.S.C. § 3145(c)[5] because "exceptional reasons exist to render [his] detention inappropriate." (*Id.*) Specifically, he contends that "his conviction for a violation of 18 U.S.C. § 242 is not the type of crime contemplated to require detention pending sentencing." (*Id.* at 7.)

For the reasons set forth herein, there is no basis for arguing that there is a substantial likelihood that defendant's post trial motions will be granted, and detention pending sentencing is therefore mandated by 18 U.S.C. § 3143(a)(2).[6] Defendant's arguments about the "exceptional reasons" why detention for his 18 U.S.C. § 242 conviction in inappropriate are also unpersuasive. First, it is not clear that a district court has the discretion to permit the release of a defendant under 18 U.S.C. § 3145(c). *See United States v. Sharp*, Crim. Action No. 07-231, 2007 WL 3084501, at *2 (D.D.C. Oct. 23, 2007) (noting that the D.C. Circuit has not ruled on this issue); *see also United States v. Chen*, 257 F. Supp. 2d 656, 657-64 (S.D.N.Y. 2003) (noting that the majority of courts that have considered the question have concluded that § 3145(c) allows district courts to release a defendant, but agreeing with the minority view that § 3145(c) is only available

---

[5]18 U.S.C. § 3145(c) provides:

> An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly. A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

[6]In the alternative, 18 U.S.C. § 3143(a)(2) allows release pending sentencing where an attorney for the government has recommended that no sentence of imprisonment be imposed, which is not the case here.

to the appellate courts based on the "[b]asic principles of statutory construction"). But even assuming the Court has the power to release the defendant, there is no "exceptional reason" to do so here. Defendant was convicted of a crime of violence that involved kicking and/or punching Hunter while he was bound to the other detainees arriving at Superior Court, resulting in injuries to Hunter. There is simply no basis for defendant's argument that this is not the type of crime for which the law contemplates pre-sentencing detention. *See United States v. Koon*, 6 F.3d 561, 563 (9th Cir. 1993) (finding "nothing clearly 'out of the ordinary,' 'uncommon' or 'rare' about" the police officers convicted of the beating of Rodney King "which set[] them apart from any one else convicted of a crime of violence, or of violating a suspect's constitutional rights" for purposes of § 3145(c)).

Release pending sentencing is therefore not available to defendant in this case.

## CONCLUSION

For the foregoing reasons, defendant's post trial motion for acquittal or a new trial [Dkt. # 28] and defendant's motion for release pending sentencing [Dkt. # 32] are hereby **DENIED**.

**SO ORDERED**.

／s／ Ellen S. Huvelle
ELLEN SEGAL HUVELLE
United States District Judge

DATE:  December 10, 2007